GEORGES LAGRANGE v. ZEPHYRIN C. BARRE and others, Heirs of Zephyrin Barré, deceased.

A condition inserted in an act of donation *inter vivos* of all the donor's property, that the donee shall, without charge, supply the donor during his life with clothes and food, and, in case of sickness, with medical attendance, and shall bestow on him all the care which children would bestow on a parent, cannot be considered as a reservation of enough of the donor's property for his subsistence, within the meaning of art. 1484 of the Civil Code. Such a donation is null for the whole. *Per Curiam :* The donor must keep in his own possession and ownership enough of his property for his subsistence. The mere promise of the donee to support the donor is insufficient. C. C. 1520, 1547.

A single decision, particularly where the point in controversy does not appear to have been thoroughly investigated, is insufficient to settle the jurisprudence of the country.

Where the value of the object given exceeds by one-half that of the charges, or services, imposed on the donee, the donation cannot be considered as an onerous one, to which, under art. 1513 of the Civil Code, the rules peculiar to donations *inter vivos* do not apply.

Excessive or inofficious donations—actions for the reduction of which are prescribed by five years, where the person entitled to exercise them is in the State, and by ten years if out of it, under art. 3507 of the Civil Code, are those dispositions which fathers and mothers, or other ascendants make of their property to the prejudice of their descendants, beyond the proportion reserved to them by law. C. C. 3522, s. 21.

An action to annul a donation *inter vivos*, in consequence of the donor's not having reserved property enough for his subsistence, is not prescribed by five years. From considerations of public order, such a donation is declared, by art. 1484 of the Civil Code, to be absolutely null.

APPEAL from the District Court of the First District, *Buchanan,* J.

Lagrange, the petitioner, represents that, on the 16th of September, 1834, he made to Zephyrin Barré, by public act, a donation *inter vivos* of all he possessed, to wit, a tract of land and five slaves, on the condition that the donee should furnish him with food, bedding, clothes, fire, lights and medical attendance, free of any charge, during the petitioner's life. That on the 25th of December, 1839, Z. Barré died, leaving certain heirs and a widow in community, the defendants in the present action; that since Barré's death, the defendants have neglected to comply with the condition of the donation, and have, by their bad treatment, insults and outrages, compelled him to quit their house, thus leaving him entirely destitute, and authorising him to claim the revocation of the said donation; and that the donation is null and void, he having thereby divested himself of all his property, real and personal. The petition alleges that Barré had sold the land to one Valbuzi Cavelier, a free man of color, for the price of $800; that the defendants are in possession of the slaves, and of the said sum of money; that he has a right to claim $60 a month, as the wages of the slaves, and legal interest, at five per cent a year, on the sum of $800, from the period of the defendants' failure te comply with the conditions of the donation, i. e. from the 1st of January, 1841. He also claims $1500 for damage suffered by him since he was compelled to leave the defendants' house. The petition concludes by praying that the act of donation may be annulled, the property given to Barré restored, and for the wages, interest, and damages claimed by him. He also prays that Cavelier may be made a party to the action, and condemned, with the defendants, to restore the land; and for general relief, &c.

The defendants admitted that a donation had been made of the land and slaves to Barré, but averred that it was not a gratuitous, but an onerous donation, and that the rules concerning gratuitous donations are inapplicable to it. They deny that they have ever refused to comply with the conditions imposed on them by the donation, and allege that they have always fulfilled, and are still willing to fulfil said conditions. They aver that the plaintiff did not divest himself of all his property, but reserved enough for his subsistence; deny that they have caused any

damage to him ; and pray, as to the plaintiff's demand, to be dismissed with costs.  In a demand in reconvention defendants claim, in case judgment should be rendered against them, $4,000 from the plaintiff, for necessaries supplied for his use during eight years, from September, 1834, till the beginning of 1843, when plaintiff voluntarily left their house.

The case was tried without a jury.  The plaintiff introduced in evidence the act of donation to Barré, dated 16th Sept. 1834, and the sale from Barré to Cavelier of the land, dated the 6th May, 1837.  The former recited that the donor, wishing to prove his friendship for his nephew, Z. Barré, thereby made to him a donation of five slaves, and of a tract of land having a front of one *arpent* and a half on the Mississippi river, with a depth not precisely known, the whole tract being bounded by the estates of certain contiguous proprietors whose names are mentioned, and on the following conditions : *First*, that the donee shall pay all the expenses of the act ; *Secondly*, that he shall pay all the taxes or other charges to which the property is, or may be subject ; *Thirdly*, that he shall support all the servitudes with which the said land may be charged ; *Fourthly*, to execute any leases, or contracts of hire, which may have been made of any of said property ; *Fifthly*, to furnish the donor with food, bedding, linen, fire, and lights during the donor's life, and, in case the donor should fall sick, that the donee and his servants shall bestow on him all the attentions which children would show to a father, and cause him to be attended by the physician of the family, all free of any charge against the donor.  The act declares the land given to be worth $700, and the slaves $2,200.

The act of sale to Cavelier showed that the land was sold for $800.

It was admitted on the trial that, at the time of the donation, the plaintiff was possessed of no other immovables or slaves than those included in the act.  No proof was offered to show whether he had, at that time, any moveable property whatever. Several witnesses were examined both on the part of the plaintiff and defendants, to prove the annual expense of boarding and clothing the donor in the style in which he had been accustomed to live, and the character of the treatment he had received from

the defendants since the death of Z. Barré. The witnesses for the plaintiff estimated the expense of his support at $100 a year, or less. One of the witnesses for the defendants, an overseer in their employment, deposed that he would not undertake to support the donor for less than $400 a year, while another witness on the same side, declared that $200 was amply sufficient. The testimony was contradictory as to the treatment of the plaintiff, since the death of Z. Barré. One of the plaintiff's witnesses testified that negroes, in ordinary condition, were hired in the parish in which defendants reside, at from $120 to $140 a year.

The District Court annulled the donation; declared the slaves to be the property of the plaintiff; and gave judgment in his favor against the defendants, heirs of the donee, for their virile portion of the hire of the negroes from judicial demand till paid, at the rate of $100 a year for each slave, and of the price of the land ($800,) which had been alienated by their ancestor, with legal interest thereon from judicial demand; and for costs. The defendants appealed.

*St. Paul*, for the plaintiff. The donor having divested himself of all his property, the donation is null. Civil Code, arts. 1484, 1515. The condition imposing on the donee the duty of maintaining the donor, is not a sufficient reservation to render the donation valid. The thing reserved, says Gomez, p. 445, must be "*res vel quantitas notabilis et non ita parva, tenuis et minima*"— such as would be worth disposing of by will. A stipulation that the donee shall maintain the donor does not change a gratuitous into an onerous donation. Dalloz, Dict. de Jurisprud. vol. 2, *verbo* Donation, p. 135, nos. 9, 10. 4th Bruss. Ed. 6 Pothier, Traité des Fiefs, vol. 11, pp. 362, 381. Though there had been no stipulation that the donee should support the plaintiff, he would be bound to do so, and his failure would render the donation null. Civil Code, art. 1547, §3. It is on the defendants to show that the donor possessed other property; he cannot be required to prove a negative—that he had none. By art. 1513 of the Civil Code, it is declared that the rules applicable to donations *inter vivos* shall extend to onerous donations, where the value of the thing given exceeds by one-half that of the charges imposed. The cost of supporting the donor in this case is shown

to have been about $100 a year, while the income from the pro-
perty given by him, each slave hiring for $100 a year, must
have exceeded $500.

Art. 1484 of our Code is taken *verbatim* from the 69th law of
Toro, Novissima Recopilacion, Lib. x, tit. 7, ley 2. Instituto
Civil y Real (Berni) page 86, Lib. 11. tit. 7. Asso y Manuel,
Instituciones del Derecho Civil de Castilla. Tom. 2. Lib. 11, tit.
9. § 11. Fuero Real, Lib. 3, tit. 12, ley 6. In Febrero, Novissi-
mo ô Libreria de Jueces, tom. 2, cap. 22, § 5, the wisdom of the
69th law of Toro is thus explained. "La razon es porque ade-
mas de quedarse el donante sin lo necesario para su manutencion,
se priva del derecho de testar, y se puede dar ocasion el donato-
rio paraque maquine la muerta del donante con el fin de apode-
rarse prontamente de sus bienes." And further on: "No con-
viene en el orden publico que los hombres sean prodigos." The
provision of the law of Toro was afterwards inserted in a some-
what different, though not less explicit form, in Martinez, Libre-
ria de Jueces, tom. 7, p. 176. § 98, in these words: "Ninguna
persona puede hacer donacion de todos sus bienes, aunque diga
que la hace y sea solamente de los presentes; y si la hiciere es
nula e inofficiosa."

When it is considered that the framers of our Code had, while
preparing it, these very laws before them, as well as the Code
Napoleon, and that these provisions are not to be found in the
latter, we must conclude that they intended that such donations
should be, as in the Spanish law, absolutely null; otherwise,
art. 1484 is without any meaning.

*Forcelle*, for the appellants. The defendants have complied
with the conditions of the donation, except so far as they have
been prevented by the plaintiff himself. "*La condition apposée
à une donation est reputée accomplie, quand le donateur en a empêché
l'execution.* Guilhon, Traité des Donations, vol. 2, p. 54, no. 593.
The reservation in the donation was sufficient. "On peut don-
ner tous ses biens," says Domat, vol. 1, p. 303, no. 8, "pourvu
qu'il y ait une reserve d'usufruit, *ou d'autre chose qui suffise pour
la subsistance et l'entretien du donateur.*" The Spanish authori-
ties are to the same effect. "*La donacion* [de todos los bienes]
será tambien válida si el donatorio se obliga á mantener al do-

nante mientras viva. Tapia, Febrero Nov. vol. 2, p. 464, no. 5. See also the case of *Vicks* v. *Deshautel*, 9 Mart. p. 85, which was decided while the Spanish laws were still in force, in which there was the same restriction as in art. 1484 of our Code. Moreover, the defendants have never been put *in mora.* Civil Code, art. 1906 *et seq.* The action is prescribed by five years (Civil Code, art. 3507), the donation having been made in the 16th Sept. 1834.

*St. Paul,* in reply. The case from 9 Mart. is inapplicable. There the contract was an onerous one. The quotation by the appellants' counsel from Febrero, is not more happy. That author, *loco citato*, declares that the donation might be valid should the donee oblige himself to maintain the donor during his lifetime, but he adds, "enterrarlo segun su calidad y cumplir lo que disponga en su testamento." Art. 3507 of the Civil Code speaks of *inofficious* donations—not of such donations as the one sought to be annulled in this action. See *Tippet et al.* v. *Jett*, 3 Robinson, 313. 1 Vazeille, des Prescriptions, Bruss. ed. 1834, p. 224, ch. 11, nos. 545, 546. Troplong, des Prescriptions, vol. 2, p. 310, § 786 *et seq*; p. 323, § 800, (Paris ed). Merlin, Repert. de Jurisp. *verbo* Prescription, sect. 1, § 6, art. 1, du Titre Vicieux. See also *Duplessis* v. *Kennedy*, 6 La. 235. Civil Code, arts. 12, 1887, 1889. Against the plaintiff the prescription of ten years runs only from the time when the defendants ceased to comply with the conditions of the donation. Civil Code, arts. 1554, 3511.

SIMON, J. The object of this controversy, is to obtain the revocation and nullity of an act of donation *inter vivos*, executed by the plaintiff in favor of the defendants' ancestor, on the 16th of September, 1834. He, therefore, demands that all the property by him given to the deceased, be restored to his possession and ownership; that he may be compensated for the rents and profits, wages and interest which said property may have yielded during the time he was deprived of its enjoyment; and that the defendants be also condemned to pay him $1,500 damages.

The defendants answered that the donation was not a gratuitous, but an onerous one; that they have always fulfilled, and still are willing to fulfill all the conditions imposed upon their

ancestor by the said donation ; that the plaintiff has not entirely divested himself of all he possessed ; and that he has brought himself within the limits of the law, by reserving to himself enough for his subsistence. They further pleaded a reconventional demand against the plaintiff for the sum of $4,000, due them for having furnished him with all the necessaries of life from the date of the donation, in case judgment should be rendered against them in the premises.

The district judge decided that the donation should be declared null, that the slaves thereby donated should be restored to the plaintiff's possession and ownership, and that the defendants should pay him, jointly, a certain amount for the yearly hire of each slave, since the date of the institution of this suit, as also the price of a tract of land comprised among the property donated, but since sold by the donee ; and from this judgment the defendants have appealed.

The evidence shows that the donation was executed on the 16th of September, 1834, comprising a tract of land and five slaves, with the following stipulated charge, to wit : " *De nourrir le donateur, de lui fournir le lit, linge, feu, lumière, sa vie durante, et encore à condition que si le donateur tomboit malade, ledit sieur Barré et ses domestiques lui donneront tous les soins que des enfans donneroient à leur père, et le feroit visiter par le médecin de la maison, le tout sans qu'il puisse en rien couter au donateur.*" The tract of land was sold by the donee, in May, 1837, for the sum of $800 ; but the slaves are yet in the possession of the defendants, as heirs of the donee.

The appellee's claim is based upon the fact that the land and the slaves comprised all the property which he possessed, and that, consequently, the donation is void by the 1484th article of the Civil Code ; and he also sets up that the heirs of the donee have neglected to comply with the obligations stipulated in the contract, of supporting and treating him as children should treat a parent.

The defence rests upon the allegations of the donor's not having entirely divested himself of all he possessed, as he reserved to himself enough for his subsistence ; that the donation is not a gratuitous, but an onerous one ; and that defendants have

always fulfilled the conditions therein stipulated; and also upon the plea of prescription of five years. Hence, two principal questions arise:

1st. Does this donation come within the meaning of article 1484 of our Code, as being prohibited by law?

And 2d. Is the action to have it declared null, prescribed by the lapse of five years from its date?

I. Art. 1484 of the Civil Code is in these words: "*The donation inter vivos shall in no case divest the donor of all his property ; he must reserve to himself enough for subsistence ; if he does not do it, the donation is null for the whole.*" The terms of this law appear to throw a certain incapacity upon every citizen to dispose and divest himself of all his property by donation *inter vivos*, and declare that such donation shall be null (not reducible), if he has not reserved to himself *enough* of his property for subsistence. The expression, *reserve to himself*, cannot be understood to mean that he should rely upon others for his subsistence, but that he should himself keep in his possession and ownership a sufficient portion of his property to provide for his subsistence. This seems to be the spirit of this law, as it would be vain to say that the mere promise of the donee to support the donor is a sufficient reserve in the sense of article 1484, since the same obligation, without any contract on his part, is imposed upon him by article 1547, which gives to the donor the right of revoking the donation, if the donee *refuse him food when in distress*—"*lui refuse des alimens, lorsqu'il est dans le besoin.*" Thus, it is manifest, that the law maker never intended that on a simple stipulation of alimony, a man should divest himself of all his property by donation *inter vivos*. He must keep a sufficient amount for his subsistence; and we are confirmed in this opinion by article 1520 of the Civil Code, which does not permit that a donor should reserve to himself the usufruct of the property given; and this is certainly more than a mere stipulation, or promise of alimony, on the part of the donee.

Article 1484 of our Code appears to have its origin in the 69th law of Toro, the text of which is: "*Ninguno pueda hacer donacion de todos sus bienes, aunque la haga solamente de los presentes.*" Noviss. Recop. lib. 10, tit. 7, ley 2. Instituto Civil y

Real, (Berni) p. 86, lib. 11, tit. 7. Asso y Manuel, Institu-ciones del Derecho Civil de Castilla tom. 2, lib. 11, tit. 9, § 11. Fuero Real, lib. 3, tit. 12, ley 6. Gomez, in his commentary on the law 69 de Toro, in speaking of the portion the donor must re-serve to himself, informs us that it must be : " *Res vel quantitas notabilis, et non ita parva, tenuis et minima.*" Febrero Noviss. ô Lib. de Jueces, tom. 2, cap. 22, § 5, commenting on the 69th law of Toro, says : " *La razon est porque ademas de quedarse el donante sin lo necesario para su manutencion, se priva del derecho de testar, y se puede dar ocasion al donatario para que maquine la muerte del donante con el fin de apoderarse prontamente de sus bienes.*" And further, he says, that, " *No conviene en el orden publico que los hombres sean prodigos.*" So, also, it is found in Martinez, Lib. de Jueces, tom. 7, p. 176, § 98, in these words : " *Ninguna per-sona puede hacer donacion de todos sus bienes aunque diga que la hace y sea solamente de los presentes ; y si la hiciere es nula e inoffi-ciosa.*" It is perfectly clear from these authorities, that the mere obligation on the part of the donee to support the donor is not sufficient to make a donation *omnium bonorum* valid, and as they are in concordance with our laws on this subject, we feel no hesitation in adopting the same doctrine.

It has been urged, however, that the question is not new in our jurisprudence ; and that a similar question was passed upon by this court in the case of *Vick v. Deshautel,* 9 Mart. 85, where a similar donation, with a promise by the donee to support the donor, was held valid. The quoted case does not decide any such thing ; and if it did, it was rendered under the old Civil Code, in which no such prohibition is found, and the question does not appear to have been investigated under the Spanish laws then in force. Moreover, article 50, p. 220 of the Code of 1808 permitted the donor to reserve for himself the usufruct of the property by him donated ; a disposition which is now pro-hibited by article 1520 of the new Code ; and, as we have often said, it requires more than one decision to establish the juris-prudence of a country, particularly when, in a solitary one, the point in controversy does not appear to have been thoroughly investigated and examined. The quotation from Febrero, re-lied on by the appellants' counsel, to wit : " *Pero si el donante se*

*reserva para se por toda su vida el usufructo de sus bienes,* (which is prohibited by our Code,) *y los suficientes de que poder testar libremente, y el usufructo es competente para su manutencion, será valida, como tambien si el donatario se obliga a mantener al donante mientras viva, enterrarlo segun su calidad y cumplir lo que disponga en su testamento"*—rather shows that the mere obligation of the donee to support the donor, is not sufficient; that something else is necessary, consisting in the donee's obligation to give effect to the dispositions contained in the donor's last will or testament; and surely this necessarily implies, that the donor has reserved to himself some property which may be the subject of his testamentary dispositions—that is to say, *" los suficientes de que poder testar libremente."*

Now it is admitted in the record that, at the time of the donation, the donor was not possessed of any other property, immovables or slaves, but that included in the act of donation. The appellants have not shown that he had any personal or immovable property which he could reserve to himself, and it is obvious that this donation was really one *" omnium bonorum"* prohibited by our law. With regard to the point that the donation under consideration was not a gratuitous, but an onerous one, we think it is untenable. Under art. 1513 of the Civil Code, the value of the object given must exceed by one half that of the charges; and we agree with the judge *a quo* in the opinion that the annual rent and profits of the things donated, not to speak of their value as estimated in the contract, are clearly shown to be more than double the amount of the charges imposed upon the donee.

II. We now come to the question of prescription. The appellants' counsel relies upon art. 3507 of the Civil Code, which says: *"The action of nullity, or recission of contracts, testaments, and other acts; that for the reduction of excessive donations, &c, are prescribed by five years,* when the person entitled to exercise them is in the State, and ten years, if he be out of it." Disposing first of the question arising from the second provision of the law relied on as applicable to this case, we have only to say; that this is not an action for the reduction of an excessive donation; that an *inofficious* or excessive donation, means the disposition which

fathers and mothers, or other ascendants, make of their property to the prejudice of their descendants, beyond the proportion reserved to them by law (Civil Code, art. 3522, § 21) ; that such donations retain all their effect during the life of the donor (Civil Code, art. 1490); and that the action to have them reduced, only belongs to the forced heirs of the donor, to be exercised, after his death, against the donee or his heirs.   Civil Code, arts. 1489, 1491, 1504.   See also 1 Vazeille, Prescription, page 224, nos. 545, 546 *et seq.*

There remains then the first provision of art. 3507, which, the appellants contend, is applicable to this case.   We have already seen that art. 1484, under which this action was instituted, prohibits this kind of donation in an absolute manner.   It says that it shall be *null for the whole* ; and thus declares that no legal effect whatever can be given to such dispositions.   Febrero, *loco citato*, says : " *No conviene en el orden publico que los hombres sean prodigos ;*" and we have already said that the terms of the law throw a certain incapacity upon every individual of disposing, and divesting himself, of all his property by a donation *inter vivos*. Art. 12 of our Code says that, "whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed ;" and, in the case of *Gasquet* v. *Dimitry* (9 La. 590), this court, in examining a question relative to a contravention of a prohibitory law, in which the nullity of the act is not formally expressed, said : " In every well organized State, those laws which establish the order of hereditary succession, which regulate the capacity to dispose by last will, (here it is by donation *inter vivos*,) would seem to stand first in rank of those rules involving the great interest of public order, and essential to the welfare of society."   Here, the nullity of the disposition is expressly declared in the law itself, and it would seem strange indeed that, notwithstanding this positive provision, persons incapacitated by law from making a particular donation— from extending their liberality, nay, their prodigality to divesting themselves of the whole of their property, should become capable, after five years from the date of their donation, under a law which declares the act to be absolutely *null*.   The maxim, " *Quod ab initio vitiosum est, non potest tractu temporis convalesc-*

ere," is clearly applicable to the matter at issue. Merlin, Repertoire, *verbo* Prescription, s. 1, § 6, art. 1, says : " *Quand le titre est frappée d'une nullité absolue, point de prescription ;*" and Vazeille, Prescription, No. 540, expresses his positive opinion : " *Que les conventions et les dispositions contraires aux bonnes mœurs, ou à l'ordre public sont frappées d'une nullité qu'aucune prescription ne sauroit effacer.*" See also Troplong, Prescription, No. 132. That the nullity pronounced by art. 1484 is based upon motives of public order, and that the act done in contravention of its prohibition is against good morals, can hardly be doubted, and will be easily understood. Is it not against public order, as Febrero says, that a man should extend his prodigality to divesting himself of the whole of his estate ? Is not excessive prodigality injurious to the prosperity of families, and to the good order and welfare of society ? It is not against good morals that a citizen should strip himself of his means of subsistence, and turn himself out as a beggar upon the community ; or, if he is to depend upon the indefinite promise of another, that he should have to rely not only upon the will and caprices of a stranger, but also to subject himself to the contingency of the latter's always possessing sufficient means to provide him with the necessaries of life ? The 11th art. of our Code says, that individuals cannot, by their conventions, derogate from the force of laws made for the preservation of public order or morals. Such derogation, according to art. 12, to a prohibitary law, is void. The law on which this action is based, declares the absolute nullity of the disposition, and we are of opinion that such nullity cannot be removed, nor cured by the prescription of five years.

On the whole, we think that the judgment appealed from is fully supported not only by law, but also by the evidence, and that it should not be disturbed.

*Judgment affirmed.*

* *Forcalle,* for a re-hearing. The donation should not be annulled. Plaintiff has proved that he had, at the time of the donation, no other immovables or slaves ; but he has not shown, that he had *no other personal property.* The *onus probandi* is on the plaintiff. See Toullier, vol. 4. p. 96, nos. 76, 77, 84, in his commentary on art. 911 of the Code Napoleon, which is identical with art. 1478 of the Civil Code of this State. *Re-hearing refused.*