## No. 2631.—GILBERT LYMAN v. KATE TOWNSEND.

A person owning a house in the city of New Orleans situated within the limits of the district where the keeping of houses of prostitution are allowed by the city, may lease his house for that purpose and recover the rent from the lessee.  In such a case the lessee can not be permitted to plead the immorality of her own calling as a shield against the payment of the rent of the property which she has used.
The decision in the case of Kathman v. Walters, 22 An., page 54, is overruled by this decision.

APPEAL from the Fifth District Court, parish of Orleans.  *Leaumont, J.  Whitaker & Rice*, for plaintiff and appellant.  *L. Madison Day*, for defendant and appellee.

TALIAFERRO, J.  This is a suit on a contract of lease.  The plaintiff alleges that he leased to the defendant a house in New Orleans, on Customhouse street, for a term of five years from the first of December, 1866, at the rate of $200 per month, payable in advance; that the defendant has failed to pay the rent in accordance with the contract, and specifies certain sums due and to become due, for which he prays judgment.  He seized provisonally the furniture in the house in virtue of his lien as lessor.

The defendant avers that in conformity with her engagement she paid the rent at the rate of $200 per month up to the first of February, 1868, and since that time up to the first of December, 1868, she paid by agreement with and consent of the plaintiff $150 per month as compensation in full for the rent per month.  She further alleges that the building she leased from the plaintiff was used as a house of prostitution and intended so to be used at the time the lease was made, and that with the knowledge and consent of the plaintiff.  That the contract is void, as being one reprobated by law and against morals.

·40

Lyman v. Kate Townsend.

There was judgment in the court below as of non-suit, and the plaintiff has appealed.

It will, in the first place, be proper to inquire whether the keeping of brothels or houses of prostitution are prohibited by law. By the statute of 1855 relative to crimes and offenses, p. 144, section 92, under the head of "Offenses against Public Order, Health and Police," it is enacted, "that whoever shall be guilty of keeping any disorderly inn, tavern, ale house, tippling house or brothel, shall suffer fine or imprisonment, or both at the discretion of the court, and the offender may likewise be adjudged to forfeit his license to keep a house of public resort or entertaiment." The prohibition here expressed is not against the keeping of houses of the kind mentioned, but against keeping disorderly houses of the character specified. In the case of the city of New Orleans v. Eliza Costello, 14 An., p. 37, this court said, in reference to this ninety-second section of the act of 1855, that it "does not prevent the city from levying a tax upon boarding houses kept for these people (meaning lewd women), provided they do not license disorderly houses of this class." The city heretofore levied "an annual license tax of two hundred and fifty dollars upon each and every person keeping any house, room or dwelling for the purpose of renting rooms to or boarding lewd and abandoned women." Whether such license tax is now imposed we are not apprised. The city clearly has the right to impose a license tax of that kind.

It appears that, by ordinances of the city, certain districts or localities are defined within which alone the keeping of houses of the class mentioned in the ninety-second section of the act of 1855 is permitted, and it is shown that the house leased by the plaintiff to the defendant is situated within one of these districts. It seems then that no law of this State prohibits the disreputable calling or occupation which the defendant in this case is not slow in admitting she is engaged in It permits such trade or occupation on the condition that it be prosecuted in an orderly manner and within certain specified limits. Houses are indispensable for the shelter and lodgment of the persons so employed. Is it unlawful for the owner to lease a house for such a purpose ? If his fate be so cast that his buildings fall within localities in some sense degraded by the law-maker, subjecting them to the annoyance of public brothels, should he be debarred from deriving revenue from the lease of his buildings to be used for such establishments ? He is required to pay a pro rata tax upon his property which, it might be from its unfortunate location, could not be leased for any other purpose. These questions may be answered by recurring to the right we find that persons of the class of the plaintiff possess under the law to keep houses of ill fame. With that right they are impliedly vested with the right to buy or lease buildings for their business. The right to

lease a house to be used for the purposes of a brothel implies a corresponding right in the owner to let a house for such a purpose. Contracts for such purposes are repulsive to the moral sense, but when allowed by law what warrant is there for declaring them null as being contrary to good morals? Courts have not to deal with the question whether laws sanctioning contracts of the kind are wise or unwise. Upon the legislator is imposed that difficult and ungrateful task. It is for him to encounter the danger of passing between Scylla and Charybdis. It is for him, in pondering the vexed problem, to view society just as it is, and not as we desire it should be. His trouble in this direction is, that he can raise man's moral standard no higher than his physical condition will permit. It is for him to divine, in regard to these things, whether from necessity, great evils must not be tolerated in order that greater ones may be avoided—whether he should mitigate, even if it be at the expense of enactments offensive to the moral sentiment of many, deep rooted evils which he is unable successfully to combat. Upon such a basis many of the strong thinkers of the present day are inclined to legislate.

In the case now under consideration if we should decide the issue adversely to the plaintiff there would be presented the awkward anomaly of the defendant being able legally to lease the plaintiff's house for disreputable purposes, and after having used it for many months avoid payment according to contract by openly avowing her own turpitude in pleading in defense her violation of morals in the use to which she put the premises leased. To annul the contract in the interest of the defendant would seem to outrage morals at least as much as it would to enforce it in behalf of the plaintiff.

As opposed to the views here intimated we are referred to the decision of this court in the case of Kathman v. Walters, 22 An., p. 54. The opinion in that case, after a more thorough and deliberate consideration of the subject, we are not inclined to sustain. In the case at bar we think the plaintiff should prevail.

It is therefore ordered that the judgment appealed from be annulled; that the plaintiff have judgment in his favor against the defendant, as follows: That he recover from the defendant the sum of eight hundred dollars, with legal interest on two hundred dollars thereof from first December, 1868; with like interest on the like sum of two hundred dollars from first January, 1869; like interest on the like sum from first of February, 1869; and like interest on the like sum from first of March, 1869; that he recover from the defendant the further sum of forty-six hundred dollars with legal interest upon the several installments composing that sum as they severally became due, according to the terms of the written contract of the parties—legal interest to be so computed, commencing on the first of April, 1869, for two

hundred dollars. and so success.vely on each subsequent installment of like amount becoming due respectively on the first day of each month until the first of February, 1871. It is further ordered that the lessor's privilege be recognized in favor of the plaintiff upon the furniture provisionally seized by him in this case, and that the same be sold and the proceeds applied towards the payment of this judgment. And it is further ordered that defendant and appellee pay all costs of these proceedings.

HOWELL, J., *dissenting.* For the reasons given in my dissenting opinion in the case of Hubbard *v.* Moore, just decided, and on the authority of Kathman *v.* Walters, 22 An. 54, I dissent in this case. I am not aware that such houses are licensed by law.

Rehearing refused.