No. 3068.

## ELIZA V. MAHOOD *v.* IDA T. TEALZA, Wife, et al.

A large lot of furniture having been sold by plaintiff to defendant, for which part payment has been made to a considerable amount, plaintiff sues for the balance due on the same or for the restoration of the property. Defendant, avowing her own infamy, maintains that she is not bound by a contract *contra bonos mores*, as it was to the knowledge of plaintiff that the furniture was bought for the purpose of keeping a house of prostitution. The defense can not be accepted. The knowledge of the plaintiff of the immoral use for which the furniture was purchased did not violate the contract.

APPEAL from the Seventh District Court, parish of Orleans. *Collens,* J. *Bentinck Egan,* for plaintiff and appellant. *A. Trudeau,* for defendant and appellee.

TALIAFERRO, J. The plaintiff in this case sold to the defendant on the sixth January, 1868, a lot of furniture at the price of $5500, to be paid monthly, in sums of two hundred dollars each month, except for the last month for which one hundred dollars were to be paid. Twenty-eight promissory notes were furnished by the purchaser for these consecutive monthly payments. The contract was entered into before a notary public. It was stipulated by the parties that after full payment

of all the notes the furniture was to become the property of the defendant. The plaintiff in her petition sets out that $4000 of the price have been paid; that eight of the notes, making $1500, are unpaid; that defendant refuses to pay them, and has sold and disposed of a portion of the furniture, and is endeavoring to make away with the remainder, to defeat the plaintiff's rights and to defraud her of all recourse for payment of the remainder due her on the contract. She prays judgment recognizing her as the owner of the furniture, and that she recover possession of the same, or that she have judgment for the amount of the eight unpaid notes with privilege upon the property.

The plaintiff caused the furniture to be sequestered, and subsequently released it by entering into bond and taking possession of it, the defendant having failed on her part to do so.

The answer is a general denial. The defendant admits having purchased certain furniture from the plaintiff, but avers that she was induced to do so by the fraudulent representations of the plaintiff in regard to the cost and value of the furniture, and that defendant was, through error on her part and fraud on the part of the plaintiff, induced to enter into the agreement to pay a price greatly exceeding the value of the property. But the defendant obviously places her defense mainly upon the ground of the alleged illegality of the contract growing out of its violation of morals and public order. She avers broadly and has made the averment good that both she and the plaintiff were at the time of the contract keepers and managers of public houses of prostitution; that the large lot of furniture purchased by defendant from plaintiff, was sold by the plaintiff and bought by the defendant with the express knowledge and purpose of both, that it was to be used in houses of that character. The defendant avowing her own infamy, invokes the maxim *ex turpi pacto nil oritur actio.*

Upon the ground that the contract was one *contra bonos mores* the court below set aside the sequestration and dismissed the suit. The plaintiff has appealed. The defendant, in her answer to the appeal, asks an amendment of the judgment by ordering that the property sequestered be restored to her, and reserving to her recourse on the sequestration bond.

In the case of Hubbard v. Moore 24 An. 591, the plaintiff sold furniture to the defendant, a keeper of a house of ill fame, with the knowledge that it was to be used in that house by the defendant. So in the case of Sampson Brothers v. Kate Townsend, 25 An. 78, the plaintiffs were aware of the destination of the furniture sold by them to the defendant, the keeper of a brothel. In these cases the court held that the knowledge of the plaintiffs of the immoral use for which the furniture was purchased did not vitiate the contracts.

In the case now before us, we see no reason why the same principle should not hold. We must, therefore, rejecting the plea of *contra bonos mores*, examine this case on the merits, and determine it according to the law and evidence. The plaintiff, we think, has not clearly made out her allegation, that a large part of the furniture in question was clandestinely sold and disposed of by the defendant. The petition refers to an informal inventory of furniture made as appears by its date on the first of June, 1867, and contrasting with it the inventory made by the sheriff at the time of the seizure under writ of sequestration, the plaintiff aims to show a large deficit in the amount. We do not see that this is conclusive. The inventory of first June, 1867, annexed to the petition is not signed by any one, and upon its face simply recites that it is a list or inventory of "furniture in houses No. 30 Basin street." This, it is shown, is one of the two houses which it seems contained furniture purchased by defendant; but the evidence does not sufficiently identify it as the same purchased by the notarial act passed six months afterwards. In that act it is declared that "sale is made of all the furniture in houses 30 and 28 Basin street, the purchaser being aware of every article therein contained, dispenses with enumerating them in this act." It is clearly shown that, about the time the sequestration was taken out, the defendant was endeavoring to sell all the furniture which the plaintiff under the terms of the contract, claims to belong to her. Eight notes, amounting to $1500, it is shown, remain unpaid. For this sum the plaintiff should have judgment with privilege as claimed.

There are two bills of exceptions in the record, taken by the plaintiff to the admission of evidence to show the immoral character of the contract. It becomes unnecessary under our view of the case to examine them.

It is therefore ordered that the judgment of the district court be annulled avoided and reversed. It is further ordered and decreed that the plaintiff have judgment against the defendant for fifteen hundred dollars; that her lien and privilege upon the property sequestered be recognized and enforced, and that the same be sold to pay the aforesaid sum, the defendant paying costs in both courts.

―――

MORGAN, J., *dissenting.* Defendant had leased from the plaintiff a furnished house on Basin street. On the sixth January, 1868, she agreed to sell the furniture contained in the house to the defendant when she should have paid her therefor $5500 for which sum she took notes payable monthly. The furniture remained in the possession of the defendant. Four thousand dollars of the agreed price have been paid; $1500 remain due. This suit is instituted by plaintiff who

prays to be declared the owner of the furniture referred to, and that she be put in possession thereof on her surrendering the unpaid notes; or, that defendant be condemned to pay her the sum of fifteen hundred dollars. She also asks for judgment against the defendant's husband. The furniture was also sequestered and a privilege thereon is claimed.

The defendant answers that the whole contract is *contra bonos mores*. She avers that when she rented the house from plaintiff, furnished, it was to plaintiff's knowledge, for the purpose of keeping a public house of prostitution, and that the furniture was purchased with the same view.

To establish these facts witnesses were offered by the defendant and their testimony was received by the court to which the plaintiff objected on the ground that it contradicted the written act between the parties. I fail to see wherein the contradiction lies, as nothing is mentioned in the act with reference to the purposes to which the furniture was to be put.

The evidence satisfies me that the allegations with reference to the purposes for which the house was rented and the furniture purchased from the plaintiff are true. She knew what business had been carried on in the house. She was in the habit of frequenting it. She went there at night, and in the morning would return and ask the inmates what amount of business had been done the night before. She gave a credit to the defendant with a grocer to enable her to purchase wine which was to be sold to persons who visited the house. The business of renting furnished houses for the purposes of prostitution seems to have been regularly followed by the plaintiff. The one in question is the third which she rents for such purposes.

Under these circumstances it is not necessary, I think, for us to consider whether the public act passed between the parties was a sale, pure and simple, or whether it contained a resolutory condition or a suspensive condition. This is not the case of a dealer in furniture, selling his goods to the first comer and claiming the unpaid price thereof from his purchaser, as were the cases of Hubbard and Sampson & Brothers. 23 An. 59; 24 An. 625. It is the case of a woman who rents a house and sells the contents thereof to another woman with the knowledge that it has been, and the avowed intention that it should continue to be, used as a public house of prostitution, the business of which was encouraged by her presence and assisted with her means. The law, I think, leaves such people where it finds them, and takes no interest in their disputes.

I think the judgment should be affirmed.

Mr. Justice Howell concurs in this opinion.

Rehearing refused.