(91 South. 252)

No. 23594.

ROSENBLATH v. SANDERS.

(March 6, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Landlord and tenant 29(1)—No action maintainable on lease of house to be used for prostitution.**

Lease of house built in segregated district and leased for purposes of prostitution was void under Civ. Code, art. 1892, and an action could not be maintained by landlord on notes given for rental and for provisional seizure.

2. **Courts 90(1)—Single decision cannot establish a jurisprudence.**

A single decision cannot establish a jurisprudence, particularly when the point decided was not thoroughly investigated.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Action by M. T. Rosenblath against Marguerite Sanders. From judgment for defendant, plaintiff appeals. Affirmed.

John F. Phillips, of Shreveport, for appellant.

Herndon & Herndon, of Shreveport, for appellee.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

OVERTON, J. [1] Plaintiff instituted this suit on unmatured notes aggregating $2,600, for the rent of a house in Shreveport, and prayed for recognition of the lessor's privilege on the property on the leased premises that was subject to that privilege, and for a writ of provisional seizure ordering the sheriff to seize such property.

Defendant, among her defenses, in a supplemental answer, pleads that the house was

leased to her for immoral purposes, and prays for the rejection of plaintiff's demand.

In the court below, defendant was successful, and plaintiff has therefore appealed to this court.

Defendant led a life of prostitution. She desired a house within which to ply her vocation, and applied to plaintiff to build her one. Plaintiff complied with her request, though with some hesitancy; for at the time there was some talk of removing the restricted district to another portion of the city.

According to plaintiff, defendant, in the negotiations for the building of the house, observing his fears, told him that there was no occasion to fear, since it would make no difference to her if the district should be removed, as she desired the house for a home. Nevertheless, when the contract of lease, as prepared by plaintiff, was submitted to defendant for her consideration and signature, it contained a provision to the effect that she should not have the right to sublease, without plaintiff's written consent, except to one pursuing her vocation. As defendant feared that the location of the district might be changed, and as she wished a greater right to sublease than that proposed, she objected, and the contract was accordingly modified so as to permit her to sublease, without plaintiff's consent, to some good white tenant. The contract was then signed; and in due course defendant, to the knowledge of plaintiff, used the place as a bawdyhouse until the district was abolished and it was made unlawful to conduct such a house. It was then that defendant undertook to leave, and this suit followed.

The record leaves no doubt, notwithstanding defendant's remark at one time that she wished the house as a home, that it was built and leased to her for purposes of prostitution. The lease, thus entered into, is the one presented to us to enforce.

Under article 1892 of the Civil Code a contract that has an immoral object is void. In Kathman v. Walters, 22 La. Ann. 54, it was held that, when a house is leased to be used as a brothel, no action lies to recover the rent; the object of the lease being immoral. In 24 Cyc. at page 908, it is said that:

"The general rule is that a lease made with the knowledge and intention of the lessor that the demised premises are to be used for immoral or illegal purposes is unenforceable and invalid."

In Lyman v. Townsend, 24 La. Ann. 625, it was held by a divided court that the lease of a house in a restricted district for purposes of prostitution is valid, and may be judicially enforced. However, in Campbell v. Gullo et al., 142 La. 1082, 78 South. 124, L. R. A. 1918D, 251, in a suit to annul a judgment and vacate a lease, the question again arose, and it was there said in determining it, and in considering the Lyman Case, that:

"We do not agree with the decision in Lyman v. Townsend, 24 La. Ann. 625, holding that the lease of a house for purposes of prostitution may be enforced. It stands isolated in the broad field of jurisprudence. 16 R. C. L. 570, 571; 24 Cyc. 908; 8 Ann. Cas. 181, note; Fuzier-Herman, Rep. du Droit Francais, vo. Prostitution, No. 124. The court considered that because prostitution was not malum prohibitum a lease for purposes of prostitution was enforceable, losing sight, as we think, of the fact that prostitution is malum in se; and that by article 1892 of the Code, 'all contracts having an immoral object are void.' A court of justice will neither enforce nor annul an immoral contract. It will have nothing to do with it; will leave the parties where they by their immoral contract have placed themselves. Lyman v. Townsend overruled a prior decision (Kathman v. Walters, 22 La. Ann. 54), where the view which we now take had prevailed, in fact, without discussion, as if as a matter of course."

Plaintiff urges, however, that at the time the contract, which is involved in this suit, was entered into, the decision in the Campbell Case had not been rendered, and the decision, in the Lyman Case, therefore, had not been overruled, but stood as a part of the jurisprudence of the state; and that he had

the right to act upon it, and also upon the decisions of this court, in Hubbard v. Moore, 24 La. Ann. 591, 13 Am. Rep. 128; Mahood v. Tealza, 26 La. Ann. 109, 21 Am. Rep. 546; City of New Orleans v. Chappuis, 105 La. 182, 29 South. 721.

In respect to the last-named case, cited by plaintiff, we fail to appreciate its application to the question here involved. In respect to the Hubbard Case, it was decided upon the theory that when a prostitute buys articles of commerce on credit, mere knowledge of the vendor that she is a prostitute, and will use them in her vocation, as such, will not defeat a suit for the recovery of the purchase price. The court was careful in that case to draw the distinction between selling a prostitute articles with mere knowledge of the fact that she was such, and in doing so with the intent to assist her in her vocation; for the court, after finding that the plaintiff in that case had no such intent, said:

"Clearly a distinction ought to be drawn between acts done manifestly in derogation of public morals and purposely to promote vice and immorality, and acts not having such manifest purpose or tendency, but which might remotely and indirectly be auxiliary to that object. In acts of the latter class there would be no absolute violation of public morals. A turpis causa would not arise in such a case to vitiate a contract in which the offense against morals would be merely conjectural. To the vicious and depraved, as well as to the good and the virtuous, belong the right to acquire the needs and comforts of a common humanity."

That case, therefore, is not applicable to the one here under consideration, where the contract, leasing the house, was entered into for the purpose of enabling the defendant to conduct a house of prostitution, at least, as long as she would be permitted to conduct one there by the authorities.

The case of Mahood v. Tealza, being also one of the cases relied on by plaintiff, and mentioned above, was a suit for the recovery of the purchase price of furniture sold.

Defendant's main defense was that the furniture was bought by her and sold her by the plaintiff in that suit with knowledge that she was conducting a house of prostitution, and with the intention that it should be so used. While the court states broadly that she established those facts, yet it may be observed that the decision does not rest upon any intention with which the sale might have been made, but expressly upon the principle that knowledge that articles of commerce sold would be used in conducting a house of prostitution does not vitiate the sale, and the case is made to rest directly on the Hubbard Case, discussed, supra, and also on that of Sampson Bros. v. Townsend, 25 La. Ann. 78, a case identical in principle with the Hubbard Case.

Therefore, when plaintiff entered into the contract of lease involved in this case, the only case directly in point, maintaining the validity of such a contract, and permitting a recovery of the rent thereunder, was that of Lyman v. Townsend, 24 La. Ann. 625, referred to above. In view of the fact that the Lyman Case is in conflict with article 1892 of the Civil Code, which it does not purport to apply, and is out of accord with jurisprudence generally, we do not think that plaintiff was justified in acting upon it, and that it was later properly overruled in the Campbell Case.

[2] A single decision cannot establish a jurisprudence, particularly when the point decided was not thoroughly investigated. Lagrange v. Barre, 11 Rob. 302.

The fact that the house was located in the restricted district does not change the principle involved. The creation of such districts does not of itself have the effect of sanctioning such contracts. The sole purpose of their creation is to isolate and control the vice, as far as possible, not to legalize it.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed, appellant to pay the costs.