## MILNE vs. DAVIDSON.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. The parties to this suit, on the 13th July, 1824, entered into the following agreement:

"Alexander Milne agrees to let to doctor Richard Davidson, the premises the said Davidson now occupies, as a hospital, at the corner of Levee street and Marigny's canal, for

A contract to rent a house for a purpose forbidden by a city ordinance is illegal, and cannot be enforced in a court of justice.

The authority of the corporation of New-Orleans, to prevent or abate nuisances, is of a very extensive nature,

EasternDis'ct
*Feb'ary*, 1827

MILNE
*vs.*
DAVIDSON.

and a strong
case of abuse
must be
shewn to in-
duce the
court to in-
terfere with
its exercise.

the term of twelve months, commencing on the 15th July, 1824, and ending on the 15th July, 1825, for the sum of $1,000 payable quarterly."

There existed, at the time of this agreement, an ordinance of the city of New Orleans, which prohibited the erection of a private hospital within its incorporated limits, and, in consequence thereof, the defendant was expelled by the municipal authorities from the premises.

The court below was of opinion, that as the agreement was made in opposition to, and in violation of a positive law, the plaintiff could not recover. From the judgment rendered in conformity therewith, he has appealed.

The case has been heard in this court *ex parte;* the counsel for the appellee not appearing.

The 157th article of our code declares,—"that all things that are not forbidden by law, may legally become the subject of, or the motive for, contracts." *C. code,* 1757.

It follows, therefore, that those things which are forbidden by law, cannot become the subject of, or the motive for, contracts.

The appellant contends, in the first place,

that these expressions in our code refer to con-
tracts passed in violation of the general law
of the land, not to those which are made in
opposition to the rules and regulations of par-
ticular corporations.

The force of this distinction is not perceived
by the court. The ordinances of corpora-
tions, while acting within the powers confer-
red on them by the legislature, have as bind-
ing an effect on the particular members of that
corporation, as the acts of the general assem-
bly have on the citizens throughout the state;
and it is as much a breach of duty to evade or
violate the one, as it would be to evade or vio-
late the other. The moral and legal obliga-
tion to obey them, is the same; and the conse-
quences of non-obedience, ought to be the
same.

But the defendant has more seriously urged,
in the second place, that this ordinance is one
which the city council had no authority to en-
act; and that, consequently, it was not illegal
for the parties to violate it.

An act of the legislature, passed the 14th
March, 1826, gives to the mayor and city
council, full power and authority to make and
pass such by-laws as they shall deem neces-

sary to maintain the cleanliness and salubrity of the city.    3 *Mart. Dig.* 224, 226.

In opposition to the strong support, which the case of the appellee derives from the extensive power conferred on the municipal authority by this legislation, the defendant has contended, that the ordinance violates natural right; and he has sustained the general reasoning which he offered to the court, by cases determined in New York, and England,—where it was held, that the fears of mankind, although well founded, did not justify a court of justice in ordering the object which excited their apprehensions to be abated as a nuisance.

The natural right to the enjoyment of property, in opposition to the positive regulations of society, is a subject of little utility in a court of justice.    It is true, that the right to acquire property may be regarded as one of those which is inherent in man; but this right which took its rise in the law of nature, has received its perfection, and had a permanency given to it, by municipal or civil law:—and it is in relation to this law, that the right of individuals, to the possession and enjoyment of things, must be examined.    The modifications

which legislative power may make in the possession, use, and distribution of property, are infinite, and nearly every contest which arises in courts of justice, proceeds from the real or imputed violation of some one of those modifications; any one of which, might be urged to be a violation of natural law, with as much reason as that of which the appellant now complains. Our code defines absolute ownership to be, that which gives the right to enjoy, and to dispose of one's property in the most unlimited manner; *provided it is not used in a way prohibited by laws or ordinances.* *C. code,* 483.

The cases read by appellant's counsel, from the common law books, certainly go to show that an establishment, such as that contemplated by the parties to this action, at the time the lease was made, would not be illegal in countries governed by that jurisprudence. But the authority of the city council to make the regulation complained of, cannot be tested by the principles of the common law in relation to nuisances. No such guide is given to them by the charter. No such limit can be inferred from the motives which we must suppose induced such

EasternDis'ct
*Feb'ary,* 1827

MILNE
*vs.*
DAVIDSON.

a grant of power, nor from the language by which it is conferred. The police of cities require many regulations which grow out of their situation—their climates and their population; and many things which would not amount to a nuisance at common law, might be hurtful here. An illustration of this, may be found in the general recourse to quarantine regulations in warm climates, and the rare resort to them in cold ones. In a city like ours, where a dreadful epidemic, frequently returning, checks its growth, and occasions a great mortality among its citizens, too much care cannot be taken to remove the causes which give rise to it. We have no doubt that the spirit and intention of the act of the legislature was (as its language indicates) that an extensive discretion should be vested in the city council. A much stronger case than that now before us, must be presented, to induce this court to interfere, and say that regulations, having for their object public health, were beyond their power because they are contrary to our ideas of expediency.

Being, therefore, of opinion, that the city council possessed the authority to prohibit

the erection of private hospitals; it follows, that an agreement, made in direct violation of it, cannot be enforced in a court of justice.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*Preston* for the plaintiff, *Smith* for the defendant.