FOURNET, Justice.
 

 The plaintiff, an ordinary partnership engaged in the business of buying and selling cotton on the future market and in buying cotton from customers “on call/’ instituted this suit to recover from the defendants, a commercial partnership and the individual members thereof, one of plaintiff’s customers from whom it bought 397 bales of cotton “on call,” the sum of $1,928.22, alleged to be due it as a result of the transaction.
 

 A sale “on call” is explained by plaintiff in one of the allegations of its petition to be as follows:
 

 “When
 
 cotton is
 
 sold ‘on call’, the seller and the buyer agree on a price of a definite number of points (a point being J4oo cent) off the selected delivery month price as the base price per pound of the cotton sold. The seller then delivers the actual cotton to the buyer and the buyer advances to the seller the price of the cotton as the same is then quoted on the New York Cotton Exchange for the future month agreed upon, less the agreed number of points off such price. For example. If December, 1935 NY cotton is quoted today at 12.48 and the buyer and seller agree on the base price of 24 points off December New York, the price the buyer advances to the seller today is 12.24 cents per pound, and from this amount the buyer retains an agreed amount per bale, which is usually from $2.50 to $5.00 per bale, as margin. With this margin left to protect the buyer, the seller may then ‘call’ the cotton at any time prior to' the delivery date for December futures and he will receive therefor the quoted December delivery price, on the date the same is ‘called’, less the agreed 24 points off. Consequently, if the market advances the seller profits the increase 'in price, and if it declines, he loses said difference between the price on the date of delivery and on the date of the ‘call’. However, if the seller does not wish to ‘call’ the price on or before the delivery date, he may transfer the transaction to some month in the future and the base price will then be 24 points off the future price for the new month, plus six points transfer fee, plus (or minus) the difference between the price quoted for the new month and the price quoted for the old month.”
 

 The defendants first filed exceptions of no right or cause of action which were overruled by the district court, and then answered, admitting the sale of cotton but set up as a defense: (1) That the contract- was a gaming or gambling transaction and not enforceable by law; (2) that they were not to be liable for any amount
 
 *733
 
 in excess of the margin deposited by them with plaintiff.
 

 The lower court rejected plaintiff’s demands without written reasons, and on appeal to the Court of Appeal, Second Circuit, the judgment was affirmed, 177 So. 266, 267. The matter is now before us for review on writs which we granted upon plaintiff’s application.
 

 The Court of Appeal has correctly stated the facts to be substantially as follows :
 

 “The defendant * * * sold to Baucum & Kimball ‘on call’ the following number of bales of cotton:
 

 Month Day Year Number of Bales
 

 10 29 31 50
 

 1 15 32 79
 

 4 30 32 15
 

 11 3 32 15
 

 12 3 32 235
 

 3 11 33 3
 

 making a total of 397 bales. All of said cotton was delivered to Baucum & Kim-ball, hereinafter called plaintiff, on the date of sale, and defendant was at that time paid [advanced] by plaintiff the actual value of the cotton as fixed by that day’s quotation on the New York Cotton Exchange for the future date upon which the price was fixed as the base price, less an agreed amount which was retained by plaintiff as margin. The base price fixed for the first cotton sold and delivered was at the price of July NY 1932; the second lot delivered at the price of October NY 1932; the third lot at the price of October NY 1932; the fourth lot at the price of July NY 1933; the fifth lot at the price of October NY 1933; and the sixth lot at the price of July NY 1933. Under said sales agreement defendant was granted the right to call the price upon which settlement would be made at anytime on or before the date upon which the price of each lot of cotton had been fixed. For instance, on the first lot of 50 bales, defendant had the right to call the price as shown by the New York Cotton Exchange on any date between October 29, 1931, and the last day of July, 1932, and plaintiff was obligated to settle for that cotton on the basis of the price as fixed by the New York Cotton Exchange on the date defendant called it. Plaintiff had no right under the contract to ever fix the price, unless, under certain conditions, the right was implied. In no instance did defendant call the price within the time originally fixed in the contracts. At the end of each period it transferred its contracts to a later date, each time paying an additional commission, until the contracts in each and every one of the transactions were transferred to May NY 1935.
 

 “During this period of practically three to four years, cotton had advanced in price and at times had declined. At no time did the price ever go below the original base price in the original contracts. During this period when the margin became excessive, due to the rise in price, defendant drew down part of it. ' When the margin became insufficient, due to a
 
 *735
 
 decline in price, it put up more. The total amount of excess margin withdrawn by defendant during that period was $13,-232, and the amount of margin advanced by defendant during the time was $4,250 and 30 additional bales of cotton. The last margin money put up by defendant was the sum of $1,250 on February 5, 1935, at which time plaintiff was notified there would be no more put up. On March 11, 1935, cotton took a decided drop in price and plaintiff called upon defendant for additional margin, which was refused. Acting on said refusal, plaintiff exercised the right to call the price, thereby closing out the contract.
 

 “After itemizing and recapitulating the entire transactions, plaintiff found that under the contracts defendant owed it the sum of $1,928.22, being the difference between the amount paid to defendant by plaintiff and the amount received by plaintiff on the transactions. Defendant refused to pay and this suit followed.” (Brackets ours.)
 

 It is a well-settled and universally recognized rule of law, as stated in Corpus Juris, vol. 27, § 271, p. 1055 et seq., that, “in the absence of some constitutional or statutory provision to the contrary, a contract for the sale of stocks or other commodity to be delivered at a future day is valid, * * * provided that the parties really intend that the goods are to be delivered by the seller and that the price is to be paid by the buyer. * * * If,' however, under the guise of a contract of sale the real intent of both parties is merely to speculate in the rise or fall of prices, and the property is not to be delivered, but at the time fixed for delivery one party is to pay to the other the difference between the contract price and the market price, the whole transaction must be considered as a wager and invalid. * * * ” See, also, Conner & Hare v. Robertson, 37 La.Ann. 814, 55 Am.Rep. 521; Standard Milling Co. v. Flower, 46 La.Ann. 315, 15 So. 16; Stewart Bros. v. Beeson, 177 La. 543, 148 So. 703, 705.
 

 “The law presumes * * * that men, in their business transactions, do not intend to violate the law or to make contracts for the enforcement of - which the law refuses a remedy. Hence, when one party charges that the contract is infected with an illegal intent, the burden of proof is imposed upon him to establish this allegation.” Stewart Bros. v. Beeson, supra, citing, with approval, the case of Conner & Hare v. Robertson, supra.
 

 A sale “on call” is to be distinguished from a sale for future delivery, in that the sale “on call” is made by one who is the owner of the cotton and the delivery is made upon the execution of the contract of sale, whereas in a contract for future delivery the seller may not even own any cotton and may have to go into the market and buy the same before the day of delivery. It is obvious, therefore, that the provisions of Act No. 16 of 1898 making it “unlawful for any person to deal or gamble in futures on agricultural products or articles of necessity, where the intention of the parties is not to make an honest and bona fide delivery
 
 *737
 
 of said agricultural products or articles of necessity,” do not apply here.
 

 The Court of Appeal, however, concluded that the contract was a gambling transaction, and therefore not enforceable under the provisions of the Revised Civil Code, art. 2983.
 

 Under the provisions of article 2983, “the law grants no action for the payment of what has been won at gaming or by a bet,” and the succeeding article of the Code, 2984, provides that “in all cases in which the law refuses an action to the winner, it also refuses to suffer the loser to reclaim what he has voluntarily paid, unless there has been, on the part of the winner, fraud, deceit, or swindling.”
 

 In Webster’s New International Dictionary the word “bet” is defined to be “that which is laid, staked or pledged, as between two parties, upon the event of a contest or any contingent issue * * * ”; and the word “wager” — “that which is risked on an uncertain event; a stake; price, bet. * * * ” See, also, definitions of the words “bet” and “wager” in Corpus Juris, vol. 27, §§ 35 and 36, pp. 973 and 974.
 

 In his law dictionary, Bouvier defines “gaming” as “the act or practice of playing games for stakes or wagers; gambling; the playing at any game of hazard. An agreement between two or more persons to play together at a game of chance for a stake or wager which is to become the property of the winner, and to which all contribute.
 
 Gaming is an agreement
 
 between two. or more to risk money on a contest or chance of any kind,
 
 where one must be loser and the other gainer.”
 
 (Italics ours.)
 

 “It has been held that the transaction is a wager * * * where the amount of the price is to be determined by the happening of an uncertain event having no bearing on either the value of the property or the purchasing power of money.
 
 But a contract of sale is not illegal where it provides for the fixing of the price to be paid according to the value, or the future market price, of the property sold.
 
 * * * ” (Italics ours.) Corpus Juris, Vol. 27, § 286, p. 1067.
 

 In the case at bar, the defendants entered into a contract for the sale of their cotton to the plaintiff, which provided for the immediate delivery of the cotton and for the fixing of the price therefor in accordance with the market value of the cotton on the New York Cotton Exchange as of a future date and that an advance be made to them by the purchaser, using as a basis therefor the quotation for cotton of similar grade on the New York Cotton Exchange as of the future date agreed upon, less a broker’s commission and a margin for the purchaser’s protection. In our opinion, such a contract does not entail any of the elements of a bet or wager, nor anything won or lost at gaming. The fact that, upon the conclusion of such a sale, the market value of the cotton might be higher or lower than was the advance quotation as of the date on which the contract was entered into, does not of itself constitute gaming or betting within the meaning and contemplation of articles 2983
 
 *739
 
 and 2984 of the Revised Civil Code any more than if the defendants had held their cotton and borrowed money thereon in anticipation of a rising market.
 

 We therefore conclude that, the defendants having received the full market value of their cotton in accordance with the terms of their agreement with the plaintiff, and having received from the purchaser (plaintiff) advances in' excess thereof, they are liable for the difference.
 

 The next defense argued by the defendants in this case is, that, in accordance with their agreement, their liability was limited to the extent of the margins deposited with the plaintiff.
 

 The contract being oral we must ascertain the contents thereof from the evidence.
 

 The custom of the trade, as alleged and established by the uncontradicted testimony of witnesses, in transactions of this kind, is that, if the sale price of the cotton exceeds the quoted delivery price on the agreed date of delivery, the excess is paid over to the vendor; on the other hand, if the price is lower, the seller of the cotton is liable for the difference.
 

 The testimony of the plaintiff and that of the defendants with reference to this phase of the contract is conflicting, but, when considered with the fact that the defendants received from time to time the excess margins when the market price of cotton rose, and when the market value went down, they put up additional margins when called upon to do so, wé think, shows their own interpretation of the contract. The burden of proving nonliability was on them, and we are of the opinion that they have failed to do so.
 

 It- is also argued by counsel for the defendants in their brief that there is no allegation in the petition that the plaintiff, under the contract of sale, was authorized to close out the defendants and sell the cotton without their consent. There is no merit in this contention because it is alleged in the petition that the cotton was purchased by the plaintiff from the defendants “on call” in accordance with the custom and manner of handling such transactions with which the defendants were thoroughly familiar. And the evidence shows conclusively that, according to the custom and manner of handling such transactions, the plaintiff was authorized to sell the cotton after having called upon the defendants for an advance sufficient to bring the margin up to the necessary, and agreed amount and they refused to comply with the request.
 

 For the reasons assigned, the judgments of the lower court and the Court of Appeal are reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff, Baucum & Kim-ball, and against defendants, Garrett Mercantile Company, J. H. Garrett, J. B. Garrett and M. C. Baker, in solido, for the sum of $1,928.22, together with 5 per centum interest thereon from judicial demand, and all costs.
 

 HIGGINS, J., takes no part.