445 So.2d 728 (1984)
A BETTER PLACE, INC.
v.
GIANI INVESTMENT COMPANY.
A BETTER PLACE, INC.
v.
MOTWANE'S AMERICA, INC.
No. 83-C-1298.
Supreme Court of Louisiana.
January 16, 1984.
*729 C. Ellis Henican, Jr., Melanie Shaw, Henican, James & Cleveland, New Orleans, for applicant.
Frederick J. King, Jr., New Orleans, for respondent.
MARCUS, Justice.
A Better Place, Inc. (ABP) brought separate suits against Giani Investment Company and Motwane's America, Inc. to recover the balances due on open accounts for merchandise sold and delivered by ABP to defendants. Defendant companies are both retail outlets owned by Kishore Motwane. Defendants answered alleging illegality, failure of consideration, and an agreement with ABP's president and owner, Timothy Hummel, for a refund credit. The suits were consolidated for trial. After trial on the merits, the trial judge rendered separate judgments in favor of ABP and against Giani in the amount of $14,887.05 together with $3,721.76 attorney fees and against Motwane's in the amount of $6,532.05 plus $1,633.01 attorney fees. The court of appeal affirmed.[1] On application of defendants, we granted certiorari to review the correctness of that decision.[2]
ABP is a manufacturer and wholesale distributor of gifts and souvenirs such as pipes, smoking accessories, snuff products, jewelry clip-ons, T-shirts and posters. Defendants have done business with ABP since 1976. On November 4, 1980, ABP sent a letter to its customers including defendants advising them that due to Louisiana's recently passed "Drug Paraphernalia Act"[3] it was removing from its inventory "any items other than legitimate tobacco and snuff accessories." In a follow-up to this notice, on November 17 ABP sent Richard Fox, its salesman who serviced all of defendants' accounts, to remove for full credit refund all merchandise which would be questionable under the law. The extent of this arrangement was disputed at trial: Hummel maintained that this return was a one time only business courtesy upon the *730 passage of the new law, while Motwane claimed that the understanding was that refund credit would also be given in the future for any items which were later challenged by the authorities.
Between December 29, 1980 and January 20, 1981, ABP sold and delivered to both defendants essentially all of the merchandise involved in this litigation.[4] On February 5, 1981, Motwane's main store was raided by the New Orleans Police Department which seized goods pursuant to a search warrant for drug paraphernalia. An undetermined amount of the items seized were sold to defendants by ABP. The seized goods are still being held by the police. After the raid, defendants refused to pay the invoices from ABP. The present litigation ensued.
At the conclusion of the trial, the trial judge stated that "the whole question here to me is whether [ABP] had an agreement to take back what [ABP] gave [Motwane] and that's all its going to be ...." Then finding that plaintiff's version of this agreement was the more likely one, he held in favor of ABP and against defendants.
The court of appeal, with one judge dissenting, rejected defendants' argument that some of the items sold were contraband and thus the sales were unenforceable. Instead, that court held it could not find that the items sold were illegal drug paraphernalia because the record did not establish by criminal conviction or otherwise that "the requisite criminal intent necessary for the items to be labeled `drug paraphernalia'" existed. In reaching its conclusion, the court of appeal interpreted the statutory definition of drug paraphernalia to require concrete proof that the seller (ABP) intended that the items on the invoices would be used by the ultimate buyers with a controlled substance. We disagree.
Louisiana's Drug Paraphernalia Act, La. R.S. 40:1031-1036, is an adaptation of the Model Drug Paraphernalia Act drafted by the United States Department of Justice and enacted in many states. This criminal act defines drug paraphernalia as "all equipment, products and materials of any kind which are used, intended for use, or designed for use ..." with a controlled substance. La.R.S. 40:1031(A)(1). The act goes on to list examples, including:
Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:
(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls.
(b) Water pipes.
(c) Carburetion tubes and devices.
(d) Smoking and carburetion masks.
(e) Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand.
(f) Miniature cocaine spoons, and cocaine vials.
(g) Chamber pipes.
(h) Carburetor pipes.
(i) Electric Pipes.
(j) Air-driven pipes.
(k) Chillums.
(l) Bongs.
(m) Ice pipes or chillers.
La.R.S. 40:1031(A)(12). Twelve illustrative factors are also provided by the act for consideration in determining whether an object is drug paraphernalia.[5] Finally, *731 criminal liability is imposed when "any person or corporation, knowing the drug related nature of the object" sells, displays for sale, or uses with a controlled substance any drug paraphernalia.[6]
This case only requires discussion of one aspect of this new act, which is the inclusion in its definition of illegal drug paraphernalia "objects ... designed for use" with a controlled substance.[7] The United States Supreme Court interpreted this "designed for use" language in its unanimous 1982 opinion upholding a drug paraphernalia ordinance:
A principal meaning of "design" is "To fashion according to a plan." Webster's New International Dictionary of the English Language 707 (2d ed. 1957). It is therefore plain that the standard encompasses at least an item that is principally used with illegal drugs by virtue of its objective features, i.e., features designed by the manufacturer. A business person of ordinary intelligence would understand that this term refers to the design of the manufacturer, not the intent of the retailer or customer. It is also sufficiently clear that items which are principally used for nondrug purposes, such as ordinary pipes, are not "designed for use" with illegal drugs.[[8]]
One independent part of the definition of drug paraphernalia thus refers to the objective physical characteristics of items. It is significant that section 1031(A)(12) of the statute particularly enumerates some of the most common forms of drug paraphernalia.[9] The legislative definition encompasses objects whose structural features are deemed inherently fashioned for use with illegal drugs, and the mental state implicated therein is absorbed into and reflected by the objective physical attributes of the finished products.[10] Objects whose dominant function is to produce, package, store, test or use illicit drugs are considered "designed" for such use. Therefore, the proper resolution of this case requires an examination of the objective characteristics of the products listed in the invoices in light of factors such *732 as those enumerated in section 1032 to determine whether these sales at least in part were of drug paraphernalia.
A finding that contraband items were included in these sales will result in no recovery for their prices. Under Louisiana's Civil Code, a judicial demand for payment of obligations relating to objects which are illegal or contrary to public order or morals will not be entertained.
Art. 1891. The object of a contract must be possible, by which is meant physically or morally possible. The possibility must be determined, not by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it.
Art. 1892. That is considered as morally impossible, which is forbidden by law, or contrary to morals. All contracts having such an object are void.
Art. 2448. Any effects of commerce may be sold, when there exists no particular law to prohibit the traffic thereof.[[11]]
Louisiana jurisprudence is replete with cases which have treated contracts tainted with illegality in object or cause as null, void and of no effect. E.L. Burns Co. v. Cashio, 302 So.2d 297 (La.1974) (contract in contravention of prohibitory law setting prescription is null); Rosenblath v. Sanders, 150 La. 882, 91 So. 252 (1922) (lease for prostitution); Martin v. Seabaugh, 128 La. 442, 54 So. 935 (1911) (gambling partnership); Milne v. Davidson, 5 Mart. (N.S.) 409 (La.1827) (lease violating zoning for hospitals); Lamy v. Will, 140 So.2d 794 (La.App. 4th Cir.1962) (gambling); J.R. Watkins Co. v. Brown, 13 La.App. 244, 126 So. 587 (1930) (wholesaler cannot recover price in illegal drug sale). If the objects of these sales were drug paraphernalia, Louisiana courts will not enforce the contra bonos mores obligation to pay for the goods but instead will leave the parties where their own conduct placed them:
[b]ut judicial tribunals should not be called upon to adjust the balance of profit and loss between joint adventurers in iniquity.... The law, whose mission is to right the innocent and to enforce the performance of licit obligations only, leaves parties who traffic in forbidden things and then break faith with [each] other, to such mutual redress as their own standard of honor may award.
Boatner v. Yarborough, 12 La.Ann. 248, 251 (1857). Issues such as estoppel and unjust enrichment between the parties to contracts with illegal objects which violate prohibitory laws of public morals will not be considered. Cilluffa v. Monreale Realty Co., 209 La. 333, 24 So.2d 606 (1946); Davis v. Holbrook, 1 La.Ann. 176 (1846).
Nevertheless, the law presumes that men in their business transactions do not intend to violate the law or to make contracts for the enforcement of which the law refuses a remedy. Hence, when one party charges that the contract is illegal, the burden of proof is imposed upon him to establish this contention. Baucum & Kimball v. Garrett Mercantile Co., 188 La. 728, 178 So. 256 (1937). Thus, illegality is an affirmative defense and as with other affirmative defenses, the defendant who pleads it has the burden of proving it by a preponderance of the evidence. La.Code Civ.P. art. 1005; Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976); J.P. Barnett Co. v. Ludeau, 171 La. 21, 129 So. 655 (1930). The illegality need not be proven beyond a reasonable doubt to sustain the defense; rather defendants must clearly show that it is more probable than not that the objects of these sales contracts were illegal drug paraphernalia. Rist v. Commercial Union Ins. Co., 376 So.2d 113 (La.1979); Wilson v. Sawyer, 106 So.2d 831 *733 (La.App. 2d Cir.1958); Tuckermann v. Jackson, 3 Orl.App. 399 (1906).
In this case, Motwane conceded receiving all the items that are on the signed invoices at their listed prices. However, the determinative question remains whether defendants met their burden of proving that some of the objects of the sales contracts upon which ABP's suits on open accounts are based are illegal drug paraphernalia. We think that they have.
Defendants have shown that a significant part of the goods sold fall within the statutory definition of drug paraphernalia. Defendants produced ABP's most recent catalog, which Hummel admitted advertised many of the prevailing merchandise codes for ABP's products even if it was no longer all-inclusive.[12] Furthermore, the deposition admitted in evidence at trial of Fox, who made all the sales in this dispute, covered the categories of merchandise sold by code numbers in detail. An examination of the invoice code numbers in light of this evidence readily reveals that a considerable part of these sales were of objects particularly listed by the legislature in the Drug Paraphernalia Act, such as water pipes, carburetion tubes and devices, roach clips and bongs. La.R.S. 40:1031(A)(12)(b), (c), (e), (h), (l). In the context of the products' objective designs, the decorations directed toward marijuana use, ABP's catalog, and the testimony of Fox,[13] we conclude that some of these objects were designed for use with illegal drugs. See La.R.S. 40:1032(1), (8), (11).
While plaintiff makes much of the failure of defendants to prove which items from the sales were seized by the police, we consider this irrelevant. The issue for our determination under La.Civ.Code art. 1892 is whether the objects sold were drug paraphernalia and hence contraband. Criminal conviction or police action is not a prerequisite to this civil determination of the nature of these products. Commerce in objects designed for use with controlled substances has been prohibited by statute, and hence these products are no more proper objects for contracts and lawsuits than are illegal drugs themselves.
In sum, we find that defendants have clearly shown by a preponderance of the evidence that drug paraphernalia items were included in the accounts sued upon. However, both sides agree that these deliveries included legal products such as posters, buttons and incense, although they vary widely on the overall percentage. Indeed, the exact dollar value of these legal sales cannot be determined from the record.[14] Some sales are valid, some invalid, and for many others the record lacks evidence of product design and other factors such as those listed in section 1032 needed for the court's finding. Therefore, in the interest of justice and in order that a proper judgment may be rendered between the parties, the case will be remanded to the district court to permit defendants to prove which of the items are drug paraphernalia because the sales of those items are unenforceable. The district court will then be able to render a judgment enforcing only the sales of the remaining lawful *734 items. La.Code Civ.P. art. 2082, 2164; Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959).
We note that while the courts below properly considered the running dealings here by which ABP stocked defendants' stores to constitute open accounts, defendants will not be liable for attorney fees under La.R.S. 9:2781 as was originally awarded by the vacated judgments. This statute must be strictly construed, and it entitles a person seeking debt collection on an open account to recover reasonable attorney fees only if he sent written demand "correctly setting forth the amount owed." Here ABP's letters to defendants demanded amounts which included the prices for contraband drug paraphernalia for which no lawful obligation was owed. Thus, our decision rejecting part of ABP's claim disentitles ABP to attorney fees. Fleet Tire Service v. Schwegmann Brothers, 408 So.2d 54 (La. App. 4th Cir.1981); Scarborough v. Nelson, 371 So.2d 1261 (La.App. 3d Cir.1979).

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the district court for further proceedings consistent with the views expressed herein. Costs of this appeal shall be paid by plaintiff. The assessment of other costs shall await the final determination of the litigation.
NOTES
[1] 432 So.2d 946 (La.App. 4th Cir.1983).
[2] 437 So.2d 1145 (La.1983).
[3] 1980 La.Acts No. 669.
[4] The sole exception was a delivery on February 27, 1981 of 500 Mardi Gras posters for $1,000 to Motwane's, represented by the last of the 115 invoice sheets sued on.
[5] § 1032. Determination of drug paraphernalia

In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other legally relevant factors, the following:
(1) Statements by an owner or by anyone in control of the object concerning its use.
(2) The proximity of the object, in time and space, to a direct violation of the Uniform Controlled Dangerous Substances Law.
(3) The proximity of the object to controlled substances.
(4) The existence of any residue of controlled substances on the object.
(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows or should reasonably know intend to use the object to facilitate a violation of the Uniform Controlled Dangerous Substances Law; the innocence of an owner, or of anyone in control of the object, as to a direct violation of the Uniform Controlled Dangerous Substances Law shall not prevent a finding that the object is intended for use or designed for use as drug paraphernalia.
(6) Instructions, oral or written, provided with the object concerning its use.
(7) Descriptive materials accompanying the object which explain or depict its use.
(8) National and local advertising concerning its use.
(9) The manner in which the object is displayed for sale.
(10) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise.
(11) The existence and scope of legitimate use for the object in the community.
(12) Expert testimony concerning its use.
[6] La.R.S. 40:1033, 1035. The act also provides for the condemnation and destruction of objects seized by the authorities if the state proves, by a preponderance of the evidence, that the seized items were distributed or possessed in violation of the law. La.R.S. 40:1036.
[7] Although not before this court in this case, the constitutionality of Louisiana's Drug Paraphernalia Act has been upheld. Tobacco Accessories and Novelty Craftsmen v. Treen, 681 F.2d 378 (5th Cir.1982). See also Village of Hoffman Estates v. Flipside, Hoffman Estates Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Florida Businessmen for Free Enterprise v. City of Hollywood, 673 F.2d 1213 (11th Cir.1982).
[8] Hoffman Estates, supra, 455 U.S. at 501, 102 S.Ct. at 1194-95. The Court conducted its analysis under the stricter test appropriate to a quasi criminal or criminal law. Id. at 500, 102 S.Ct. at 1194.
[9] For example, the Supreme Court in Hoffman considered "roach clip" to be a "technical term [which] has sufficiently clear meaning in the drug paraphernalia industry." Hoffman Estates, supra, 455 U.S. at 501 n. 18, 102 S.Ct. at 1194 n. 18. See Comment to Article 1, Common Forms of Drug Paraphernalia, Model Drug Paraphernalia Act.
[10] Hoffman Estates, supra, 455 U.S. at 501 n. 19, 102 S.Ct. at 1195 n. 19; Florida Businessmen, supra, at 1218-19.
[11] See

Art. 1893. An obligation without a cause, or with a false or unlawful cause, can have no effect.
Art. 1895. The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order.
Art. 12. Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed.
[12] By the time of these sales, not all items sold by ABP were listed in the 1978 catalog nor were all items in the catalog still offered for sale by ABP. However, any item with a code number assigned in that catalog necessarily retained that designation and was so listed in these sales, making a partial matching of these invoices to the catalog possible.
[13] Fox testified at trial on cross-examination about the nature of this product line:

Q. And are you familiar or practically familiar with all of the things in this catalog and that they are in fact used in connection with marijuana or other types of drugs?
A. They can be used, yes.
Q. And have been, wouldn't you admit that?
A. Yes.
Q. And that would be used about all or practically all of the items that are on those invoices, correct?
A. Yes.
[14] ABP is suing on 115 invoice sheets containing over 1800 listings (albeit with repetitions) of product code numbers, quantities ordered and prices. Although the catalog contains a good deal of the invoiced items, the evidence does not show the nature of all the different items line by line. See supra footnote 12.