IOANNIS MAROULIS

VERSUS

ENTERGY LOUISIANA, LLC, ET AL.

NO. 20-C-226

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 793-761, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

February 10, 2021

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Molaison, Jr.

**WRIT GRANTED; SUMMARY JUDGMENT GRANTED;**
**THIRD-PARTY CLAIMS DISMISSED WITH PREJUDICE**
    **RAC**
    **MEJ**
    **JJM**

COUNSEL FOR PLAINTIFF/RESPONDENT,
IOANNIS MAROULIS
William J. Mitchell, II
Chet G. Boudreaux
Richard F. Zimmerman, III

COUNSEL FOR DEFENDANT/RELATOR,
CASTLEMAN, DONLEA AND ASSOCIATES, LLC
Andre' C. Gaudin
Mindy N. Duffourc
Jason R. Tomlinson
Bevan W. Sabo

COUNSEL FOR DEFENDANT/RESPONDENT,
HOTEL INVESTORS, LLC AND EXPOTEL HOSPITALITY SERVICES, LLC
H. Minor Pipes, III
Stephen L. Miles
Patrick J. Lorio
Emily E. Ross

COUNSEL FOR DEFENDANT/RESPONDENT,
ENTERGY LOUISIANA, LLC
Catharine O. Gracia
Darryl M. Phillips
Sandra Diggs-Miller
John A. Braymer

COUNSEL FOR DEFENDANT/RESPONDENT,
SCOTTSDALE INDEMNITY COMPANY
Douglas M. Kleeman
Katherine K. Quirk

COUNSEL FOR DEFENDANT/RESPONDENT,
EVANSTON INSURANCE COMPANY
Sidney W. Degan, III
Paul A. Eckert
Karl H. Schmid
Travis L. Bourgeois

COUNSEL FOR DEFENDANT/RESPONDENT,
SUNBELT RENTAL SCAFFOLD SERVICES, LLC
Douglas K. Williams
Cullen J. Dupuy
Druit G. Gremillion, Jr.
Kelsey A. Clark

COUNSEL FOR DEFENDANT/RESPONDENT,
ACE AMERICAN INSURANCE COMPANY
Robert I. Siegel
Elizabeth A. B. Carville

COUNSEL FOR DEFENDANT/RESPONDENT,
AUSI BUILDERS AND CONSTRUCTION, LLC
Michael S. Futrell

**CHAISSON, J.**

In this case arising from a construction accident, relator Castleman, Donlea, and Associates, LLC ("Castleman") seeks supervisory review of a June 30, 2020 judgment of the trial court denying its motion for summary judgment seeking dismissal of third-party breach of contract and indemnity claims filed against it by Hotel Investors, LLC and Expotel Hospitality – HIM, LLC (collectively "Hotel Investors"). Pursuant to the provisions of La. C.C.P. art. 966(H), this case was assigned for additional briefing and oral argument. For the following reasons, we grant this writ application, reverse that portion of the trial court's ruling that denied Castleman's motion for summary judgment, render judgment granting Castleman's motion for summary judgment, and dismiss Hotel Investors' third-party claims against Castleman with prejudice.

**FACTS AND PROCEDURAL HISTORY**

This complex, multiparty case arises from a work-related accident that occurred during the renovation of the Hampton Inn located in Metairie, Louisiana. Hotel Investors hired Sigur Construction, LLC ("Sigur") and Castleman as the general contractors for the project. Castleman, in turn, hired Sunbelt Rentals Scaffold Services, LLC ("Sunbelt") as the scaffolding subcontractor for the project. On April 19, 2018, Ioannis Maroulis, an employee of Sunbelt, suffered an electrical shock when a piece of scaffolding equipment came into contact with an overhead power line.

Mr. Maroulis filed a petition for damages against Hotel Investors, and various other defendants, alleging various counts of negligence. Hotel Investors then filed a third-party demand against Castleman and its insurer, Evanston Insurance Company ("Evanston"), alleging a breach of the construction contract between Hotel Investors and Castleman and seeking insurance coverage under the Evanston policy.

20-C-226                                          1

In response to this third-party demand, Castleman raised the affirmative defense of an illegal contract. Castleman filed a motion for summary judgment wherein it argues that the contract it entered into with Hotel Investors is absolutely null and void *ab initio* because Castleman, a Texas-based company, is not a licensed contractor in Louisiana, and Louisiana contracting law, La. R.S. 37:2150, *et seq.*, requires construction projects costing $50,000 or more to be performed by a contractor licensed in Louisiana. Castleman supported its motion with copies of the contract documents as well as excerpts from depositions of Hotel Investors' representatives.

Following a hearing on the matter, the trial court denied Castleman's motion for summary judgment. Castleman filed this timely writ application seeking supervisory review of that judgment.

**DISCUSSION**

Appellate courts review summary judgments *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *O'Krepki v. O'Krepki*, 16-50 (La. App. 5 Cir. 5/26/16), 193 So.3d 574, 577. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Semco, LLC v. Grand Ltd.*, 16-342 (La. App. 5 Cir. 5/31/17), 221 So.3d 1004, 1031 (citing *Oubre v. Louisiana Citizens Fair Plan*, 11-0097 (La. 12/16/11), 79 So.3d 987, 1002-03).

There are no genuine issues of material fact in dispute here. Neither party disputes that the cost of the construction project exceeded $50,000 or that Castleman was not a licensed contractor in Louisiana at the time the contract, a standard-form AIA construction agreement, was executed. Rather, the arguments

made by the parties are legal ones: whether the construction contract between Castleman and Hotel Investors is null and void, and, if so, what legal effects result from such a finding. We address these issues in turn in our discussion below.

La. C.C. art. 2030 provides, "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed. Absolute nullity may be invoked by any person or may be declared by the court on its own initiative." This is a long standing principle in Louisiana law. *See Gravier's Curator v. Carraby's Ex'r*, 17 La. 118, 125 (1841).

Louisiana contracting law prohibits engaging in the business of construction without a valid license. Specifically, La. R.S. 37:2160(A)(1) states, "[i]t shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter." Individuals may not by private agreement set aside the contractor's licensing rules established by the legislature. *Leija v. Gathright*, 51,049 (La. App. 2 Cir. 12/21/16), 211 So.3d 592, 596, *writ denied*, 17-0144 (La. 3/13/17), 216 So.3d 806 (*citing Hagberg v. John Bailey Contractor*, 435 So.2d 580, 584 (La. App. 3d Cir. 1983)). Because the licensing scheme was enacted to protect the interests of public order, contracts in violation of them are in contravention of prohibitory laws and therefore void. *Alonzo v. Chifici*, 526 So.2d 237, 243 (La. Ct. App. 5th Cir. 1988), *writ denied*, 527 So.2d 307 (La. 1988); La. C.C. art. 7 ("persons may not by their juridical acts derogate from laws enacted for the protection of public interest. Any act in derogation of such laws is an absolute nullity").

It is well established in Louisiana law that a construction agreement made with an unlicensed contractor is null and void. *See Quaternary Res. Investigations, LLC v. Phillips*, 18-1543 (La. App. 1 Cir. 11/19/20); *Korrapati v. Augustino Bros.*

*Constr., LLC*, 19-426 (La. App. 5 Cir. 7/31/20), 302 So.3d 147, 153; *Leija v. Gathright, supra*; and *J. Caldarera & Co., Inc. v. Hosp. Serv. Dist. 2 of Par. of Jefferson*, 97-1025 (La. App. 5 Cir. 2/11/98), 707 So.2d 1023, 1026.

In *A Better Place, Inc. v. Giani Investment Company*, 445 So.2d 728, 732 (La.1984), the Louisiana Supreme Court articulated the evidentiary burden for a party seeking to invoke the illegality of a contract as a defense to an action for enforcement:

> Louisiana jurisprudence is replete with cases which have treated contracts tainted with illegality in object or cause as null, void and of no effect. *E.L. Burns Co. v. Cashio*, 302 So.2d 297 (La.1974) (contract in contravention of prohibitory law setting prescription is null); *Rosenblath v. Sanders*, 150 La. 882, 91 So. 252 (1922) (lease for prostitution); *Martin v. Seabaugh*, 128 La. 442, 54 So. 935 (1911) (gambling partnership); *Milne v. Davidson*, 5 Mart. (N.S.) 409 (La.1827) (lease violating zoning for hospitals); *Lamy v. Will*, 140 So.2d 794 (La.App. 4th Cir.1962) (gambling); *J.R. Watkins Co. v. Brown*, 13 La.App. 244, 126 So. 587 (1930) (wholesaler cannot recover price in illegal drug sale). … Nevertheless, the law presumes that men in their business transactions do not intend to violate the law or to make contracts for the enforcement of which the law refuses a remedy. Hence, when one party charges that the contract is illegal, the burden of proof is imposed upon him to establish this contention. *Baucum & Kimball v. Garrett Mercantile Co.*, 188 La. 728, 178 So. 256 (1937). Thus, illegality is an affirmative defense and as with other affirmative defenses, the defendant who pleads it has the burden of proving it by a preponderance of the evidence. La.Code Civ.P. art. 1005; *Prestenbach v. Sentry Ins. Co.*, 340 So.2d 1331 (La.1976); *J.P. Barnett Co. v. Ludeau*, 171 La. 21, 129 So. 655 (1930).[1]

Thus, at trial the evidentiary burden for Castleman on its affirmative defense would be to show by a preponderance of the evidence that the Prime Contract construction agreement it entered into with Hotel Investors was an illegal violation of Louisiana contracting law. In support of its motion for summary judgment, Castleman attached as exhibits: a copy of the AIA contract between Castleman and

---

[1] While *A Better Place* and the examples cited therein involve contracts which have traditional immoral objects such as sale of illegal drug paraphernalia, gambling, and prostitution, many other courts have found that if a contract has as its cause or object circumvention of state law, it will be held as an absolute nullity in contravention of the public order. *See Wynne v. New Orleans Clerks & Checkers Union, Local 1497, Int'l Longshoremen's Ass'n, AFL-CIO*, 550 So.2d 1352, 1355 (La. App. 4th Cir. 1989), *writ denied*, 558 So.2d 1125 (La. 1990) (and cases cited therein.) This is consistent with the express language of La. C.C. art. 2030.

20-C-226                                            4

Hotel Investors; depositions of Brett Chittenden, the representative of Hotel Investors who signed the agreement, David Sigur, a licensed Louisiana contractor, Charles Floca, the Hotel Investors representative who purportedly approved the contract, and Linda Castleman Donlea, the Castleman representative. These depositions indicate that the representatives for Hotel Investors were aware that Castleman was not a licensed commercial contractor in the state of Louisiana at the time the AIA agreement was signed and that Louisiana law required that construction agreements in the state of Louisiana exceeding $50,000 could only be entered into with licensed Louisiana contractors.

At the trial on the motion for summary judgment, and in its opposition to the writ application, Hotel Investors' primary argument against Castleman's affirmative defense does not refute the evidence presented. Rather, Hotel Investors argues that all work on the renovation project was lawfully performed under a valid contractor's license because it had also hired Sigur, which is licensed in Louisiana, to act as the general contractor as part of a joint venture-like endeavor. We reject Hotel Investors' argument.

This court has previously addressed the question of what Louisiana contracting law requires of "joint ventures" like the one described by Hotel Investors. In *J. Caldarera & Co., Inc. v. Hospital Service Dist. 2 of Parish of Jefferson*, *supra*, we held that a joint venture is properly licensed when each of its members holds a valid license and that each member performs work in the classification for which it is licensed. 707 So.2d at 1026. Under this Court's holding in *J. Caldarera*, the "joint venture" described by Hotel Investors would have only complied with the statutory requirements if both of the contractors involved in the "joint venture," Sigur and Castleman, were properly licensed.[2]

_____

[2] This court's holding in *J. Caldarera & Co.* was consistent with the testimony of the Administrator of the Louisiana Licensing Board for Contractors, who stated that the Licensing Board has "consistently interpreted its rules to provide that two contractors may perform as a

This is true regardless of any purported contractual agreement between Castleman and Sigur for Sigur to act as the general contractor. Castleman was not acting as a subcontractor in this matter, as evidenced by the signed AIA agreement between Castleman and Hotel Investors.[3]

Hotel Investors argues that it didn't *intend* to enter into an illegal agreement with Castleman to circumvent the law, and that it believed it was acting in accordance with the law in light of the "joint venture" agreement between Castleman and Sigur. However, what Hotel Investors intended is immaterial in this instance. Under La. C.C. art. 2030, a contract is absolutely null when it violates a rule of public order, as when the object of the contract is illicit or immoral. The object of the agreement between Castleman and Hotel Investors, the provision of construction services by an unlicensed, out-of-state contractor, is exactly the circumstance which Louisiana contracting law has proscribed in the name of public safety.

Hotel Investors further argues that public policy considerations should prevent this court from declaring the contract a nullity. Specifically, it argues that Castleman contractually assumed sole responsibility for ensuring the safety of the workers, and nullifying the contract would allow Castleman to escape liability for worker injury and failing to ensure a safe jobsite. This argument ignores that an injured party may bring his own claim against Castleman for such failures, and also ignores that Hotel Investors disregarded public policy when it elected to hire an out-of-state, unlicensed contractor. As previously noted, the licensure requirements were enacted with the express purpose of protecting the public. La. R.S. 37:2150, concerning the laws governing contracting, states:

---

joint venture without a separate license, provided that each member is licensed, and that each member perform work only in the classification for which they are licensed." 707 So.2d at 1026.
[3] Notably, Hotel Investors has nowhere addressed or refuted the holding of *J. Caldarera & Co.*

The purpose of the legislature in enacting this Chapter is the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract. …

The express purpose of the contractor licensing scheme would be defeated by allowing parties to circumvent its requirements, and a failure to declare such contracts null and void could inadvertently incentivize parties to disregard the requirements of Louisiana contracting laws. This argument by Hotel Investors is without merit.

Hotel Investors next argues that, even assuming Castleman is correct and the contract is null, Castleman cannot invoke nullity to avoid the obligations it knowingly undertook, and was paid for, because it knew it was an unlicensed contractor at the time it signed the contract. This argument relies on the language of La. C.C. art. 2033, which delineates the effects of an absolute nullity. La. C.C. art. 2033 states:

An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.

Nevertheless, a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null. The performance may be recovered, however, when that party invokes the nullity to withdraw from the contract before its purpose is achieved and also in exceptional situations when, in the discretion of the court, that recovery would further the interest of justice.

Absolute nullity may be raised as a defense even by a party who, at the time the contract was made, knew or should have known of the defect that makes the contract null.

In support of its "clean hands" argument, Hotel Investors also invokes the following official revision comment to La. C.C. art. 2033:

(c) Under this Article, a party who knew or should have known at the time of contracting of a defect that made the contract absolutely null may not avail himself of the nullity when the purpose of the illegal contract has been accomplished. *See Boatner v. Yarborough*, 12 La.Ann. 249 (1857); *Gravier's Curator v. Carraby's Executor*, 17 La. 118 (1841); *Mulhollan v. Voorhies*, 3 Mart. (N.S.) 46 (1824). This conclusion flows naturally from the principle expressed in the traditional Roman maxim, *nemo propriam turpitudinem allegare potest* (no one may invoke his own turpitude), sometimes called the "clean hands" doctrine. If a performance has been rendered under such a contract by a party with knowledge of the cause of nullity, the other party may keep that performance, in accordance with the complementary Roman maxim, *in pari causa turpitudinem potior est conditio possidentis* (in case of equal wrongdoing the one in possession is in a better position). *See* 2 Litvinoff, Obligations 163-169 (1975). The philosophy underlying those principles is not to reward the recipient of the performance, who by hypothesis is as guilty as the renderer, but to protect the court from mediating disputes between dealers in iniquity. *See Gravier's Curator v. Carraby's Executor*, 17 La. 118 (1841). *See also* Tzarano, Étude sur la règle: "Nemo auditur propriam turpitudinem allegans" 103-115 (1926); Le Tourneau, La règle: "Nemo auditur ..." 178-179 (1970).

Hotel Investors' reliance on the "clean hands" doctrine is misplaced here. A typical example of a party attempting to "avail themselves of the nullity" in the context of a construction project involves a situation where an unlicensed contractor has entered into a construction agreement with a property owner, rendered construction services, and then the owner refuses to pay the contractor because the construction agreement was null and void. *See Alonzo v. Chifici, supra, and Hagberg, supra.* In such circumstances, this Court and others have affirmed the declaration of the construction agreement as null and void because it was done by an unlicensed contractor; however, the contractors were allowed to recover its costs for labor, services and materials (but not profit) under the theory of unjust enrichment. The recovery cannot be achieved under the theory of breach of contract, because a contract made in violation of a prohibitory law is illegal and its enforcement is precluded, even though work has been done or materials furnished. *Quaternary Res. Investigations, LLC v. Phillips*, 18-1543 (La. App. 1

Cir. 11/19/20) (citing *Boxwell v. Dep't Highways*, 203 La. 706, 14 So.2d 627, 631 (1943)).

These examples are distinguishable from the case *sub judice*. The performance sought by Hotel Investors, contractual indemnity for the claims brought by Mr. Maroulis against Hotel Investors, has not been rendered. Instead, Hotel Investors has petitioned the court to enforce the terms of an illegal contract. There is no support in Louisiana jurisprudence for such enforcement. On the contrary, in considering a construction case between a construction company providing architectural services without a licensed architect and the West Baton Rouge School Board, the Louisiana Supreme Court found that the effect of having an AIA construction contract declared null and void *ab initio* was to have the execution of its arbitration clause enjoined. *W. Baton Rouge Par. Sch. Bd. v. T. R. Ray, Inc.*, 367 So.2d 332, 335 (La. 1979).[4] Similarly, under this reasoning, Hotel Investors' attempt to enforce the terms of a null and void AIA contract it signed with Castleman, including those contractual terms which require indemnity against claims brought by injured workers, must also fail.

**CONCLUSION**

For the aforementioned reasons, we find the January 31, 2018 written construction contract between Hotel Investors and Castleman null and void *ab initio* for its violation of Louisiana's laws of contractor licensing enacted to protect the interests of public order. Upon *de novo* review, we also find that there are no genuine issues of material fact, and Castleman is entitled to summary judgment as a matter of law. Hotel Investors' claims for contractual indemnity and breach of contract are unenforceable. Accordingly, we grant this writ application, reverse that portion of the trial court's ruling that denied Castleman's motion for summary

---

[4] The Court went on to note that both parties appeared to have contracted in good faith and that recourse for one party seeking recompense for money paid, even though architectural services were not rendered, may be possible under a theory of unjust enrichment.

judgment, render judgment granting Castleman's motion for summary judgment,

and dismiss Hotel Investors' claims for contractual indemnity and breach of

contract against Castleman with prejudice.

**<u>WRIT GRANTED;</u>**
**<u>SUMMARY JUDGMENT GRANTED;</u>**
**<u>THIRD-PARTY CLAIMS DISMISSED</u>**
**<u>WITH PREJUDICE</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## <u>NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY <u>**FEBRUARY 10, 2021**</u> TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**20-C-226**

### <u>E-NOTIFIED</u>

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)

RICHARD F. ZIMMERMAN, III
(RESPONDENT)
PATRICK J. LORIO (RESPONDENT)
DOUGLAS M. KLEEMAN (RESPONDENT)
CULLEN J. DUPUY (RESPONDENT)
ELIZABETH A. B. CARVILLE
(RESPONDENT)

MINDY N. DUFFOURC (RELATOR)
STEPHEN L. MILES (RESPONDENT)
SIDNEY W. DEGAN, III (RESPONDENT)
DOUGLAS K. WILLIAMS (RESPONDENT)
ROBERT I. SIEGEL (RESPONDENT)

H. MINOR PIPES, III (RESPONDENT)
DARRYL M. PHILLIPS (RESPONDENT)
TRAVIS L. BOURGEOIS (RESPONDENT)
DRUIT G. GREMILLION, JR.
(RESPONDENT)
MICHAEL S. FUTRELL (RESPONDENT)

### <u>MAILED</u>

EMILY E. ROSS (RESPONDENT)
ATTORNEY AT LAW
1100 POYDRAS STREET
SUITE 1800
NEW ORLEANS, LA 70163

ANDRE' C. GAUDIN (RELATOR)
BEVAN W. SABO (RELATOR)
JASON R. TOMLINSON (RELATOR)
ATTORNEYS AT LAW
5213 AIRLINE DRIVE
METAIRIE, LA 70001

JOHN A. BRAYMER (RESPONDENT)
SANDRA DIGGS-MILLER (RESPONDENT)
ATTORNEYS AT LAW
639 LOYOLA AVENUE
26TH FLOOR
NEW ORLEANS, LA 70113

KATHERINE K. QUIRK (RESPONDENT)
ATTORNEY AT LAW
365 CANAL STREET
SUITE 2000
NEW ORLEANS, LA 70130

PAUL A. ECKERT (RESPONDENT)
ATTORNEY AT LAW
5555 HILTON AVENUE
SUITE 620
BATON ROUGE, LA 70808

CATHARINE O. GRACIA (RESPONDENT)
ATTORNEY AT LAW
639 LOYOLA AVENUE
SUITE 2600
NEW ORLEANS, LA 70113

KARL H. SCHMID (RESPONDENT)
ATTORNEY AT LAW
400 POYDRAS STREET
SUITE 2600
NEW ORLEANS, LA 70130

CHET G. BOUDREAUX (RESPONDENT)
WILLIAM J. MITCHELL, II
(RESPONDENT)
ATTORNEYS AT LAW
5656 HILTON AVENUE
BATON ROUGE, LA 70808

KELSEY A. CLARK (RESPONDENT)
ATTORNEY AT LAW
ONE AMERICAN PLACE, 23RD FLOOR
POST OFFICE BOX 3197
BATON ROUGE, LA 70821-3197