CARAWAY, J.
liThe plaintiff appeals from a trial court’s grant of a summary judgment in favor of the intervenor bank which sought to have the plaintiffs Private Works Act lien and privilege ruled null and void. We affirm.

Facts

On June 29, 2009, Remijio Leija filed suit against John and Wendi Gathright seeking recognition of a privilege under the Private Works Act and $174,154.34 in damages, plus interest and costs. Leija asserted that he had entered into a verbal contract with the Gathrights to construct a home for them on their property in West Monroe, Louisiana, for the price of labor and materials for the home plus a ten percent fee. Construction of the home began in March of 2008, and Leija provided materials and labor for the project *594 throughout the construction process. Other subcontractors, hired by either Leija or the Gathrights, also performed certain tasks periodically during the construction process.
On October 24, 2008, the Gathrights recorded an affidavit of substantial completion which certified that work on the home was substantially complete. Leija contended that the affidavit was false and that construction continued until January of 2009. In support of this argument, he offered “punch lists” detailing tasks to be performed after the affidavit was filed. Leija later recorded his lien under the Private Works Act on February 10, 2009, when he claims it became apparent he was not going to be paid the remaining amount due on the contract.
The Gathrights responded to Leija’s petition and asserted reconventional demands, arguing that Leija had defaulted on the contract |?,and abandoned the construction project. In addition, the answer requested the lien be cancelled because Leija was the general contractor and he had failed to record the contract as required by the Act. The answer also stated that the lien was untimely filed because more than 60 days had passed since the affidavit of substantial completion was filed.
Regions Bank filed a motion for leave to intervene on October 1, 2012, asserting that it was the holder of a promissory note executed by the Gathrights and secured by a mortgage recorded on October 8, 2008, encumbering the immovable property in dispute. Regions Bank sought to have Lei-ja’s lien declared legally unenforceable because it was not properly perfected.
On March 6, 2015, Regions filed a motion for partial summary judgment[1] claiming that, because Leija was an unlicensed contractor, any agreement that he had with the Gathrights was null and void, thereby rendering his lien invalid and unenforceable. Further, Regions contended that Leija had never recorded a construction contract as required to assert a valid lien, and his lien filing was untimely as it occurred more than 60 days after the Gathrights’ recordation of the affidavit of substantial completion. Attached to the motion were Leija’s answers to Regions Bank’s requests for admissions in which he admitted he was not a licensed Louisiana contractor during the time work was being performed on the house. In addition, Lei-ja’s deposition was attached to the motion. In his deposition, Leija admitted that Rhis contractor’s license was dormant at the time the home was being constructed. Lei-ja also asserted that he was a “general supervisor” for the construction project rather than the “general contractor.” However, he admitted that his responsibilities included supervising the overall construction, coordinating with subcontractors and suppliers, and ordering materials for the construction. In fact, Leija admitted to “handling] all the subs.” He stated that regardless of whether he or the Gathrights hired the subcontractors, he was responsible for paying them and was then reimbursed by the Gathrights.
A hearing on the motion was held on May 6, 2015. On October 19, 2015, the trial *595 court issued reasons for its judgment granting summary judgment and explained that because Leija did not have a valid contractor’s license at the time he entered into his verbal contract with the Gath-rights, the contract was null and void under Louisiana law. Further, the trial court held that in light of the contract being null and void, Leija’s lien was also null and void. The trial court took special care to note that Leija was not entirely precluded from any recovery; rather, he could recover the costs of his labor, materials, and services under a quantum meruit theory.
On November 10, 2015, the district court issued a written judgment which granted Regions Bank’s motion for summary judgment, declared Leija’s lien invalid, and ordered the cancellation and erasure of the lien from the Ouachita Parish mortgage records. Leija now appeals this ruling.

Summary Judgment

A de novo standard of review is required when an appellate court considers rulings on summary judgment motions, and the appellate court Ruses the same criteria that governed the district court’s determination of whether summary judgment was appropriate. Bank of New York Mellon v. Smith, 15-0530 (La. 10/14/15), 180 So.3d 1238, 1243. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law, pursuant to La. C.C.P. art. 966. See Catahoula Parish Sch. Bd. v. Louisiana Machinery Rentals, LLC, 12-2504 (La. 10/15/2013), 124 So.3d 1065, 1071.
The burden of proof on a summary judgment motion remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment should be granted. See La. C.C.P. art. 966(D)(1).

Discussion

The initial inquiry in this case should focus on whether Leija was required to possess a contractor’s license in order to maintain a valid lien under the Private Works Act. Pertinent to Leija’s ability to establish a valid contract are the Louisiana statutory licensing provisions enacted for contractors. The goal of the licensing statutes is to protect “the health, safety, and general welfare of all those persons dealing with persons ^engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract.” La. R.S. 37:2150. The licensing provisions state that it is “unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter.” La. R.S. 37:2160(A). Further, the statutes prohibit a person from working “as a residential building contractor, as defined by this Chapter, in this state unless he holds an active license in accordance with the provisions of this Chapter.” La. R.S. 37:2167(A). Addressing inactive licensing status, La. R.S. 37:2167.1(B) explains that when a license is inactive, the holder is prohibited from engaging in any activities which require a residential building contractor license. The licensing *596 scheme defines a “residential building contractor” as including “all contractors, subcontractors, architects, and engineers who receive an additional fee for the employment or direction of labor, or any other work beyond the normal architectural or engineering services” when the cost of the undertaking exceeds $75,000, La. R.S. 37:2150.1(11).
Prohibitions on carrying on the business of contracting without a license cannot be avoided by private agreement. Hagberg v. John Bailey Contractor, 435 So.2d 580, 584 (La. App. 3d Cir. 1983). Because the licensing scheme was enacted to protect the interests of public order, contracts in violation of them are in contravention of prohibitory laws and therefore void. Id. at 584-585. La. C.C. art. 7 explains that “persons may |finot by their juridical acts derogate from laws enacted for the protection of public interest. Any act in derogation of such laws is an absolute nullity.”[2] La. C.C. art. 2030 also renders a contract absolutely null “when it violates a rule of public order, as when the object of a contract is illicit or immoral.”
Several decisions by Louisiana courts have recognized that the failure to meet contractor licensing requirements can invalidate contractual agreements. For example, in Alonzo v. Chifici, 87-738 (La. App. 5th Cir. 1988), 526 So.2d 237, the court found a contract void as in contravention of a prohibitory law regardless of the characterization of the unlicensed contractor as a general contractor or subcontractor because the licensing statute applied equally. See also Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC, 578 F.3d 255 (5th Cir. 2009) (relying on Alonzo, supra, to find Louisiana’s rule of absolute nullity for a contracting agreement in the absence of a contractor’s license limited the contractor to quantum meruit recovery). Hagberg, supra, also recognized that a contract involving an unlicensed contractor was illegal, thus precluding enforcement. However, the court also noted that because the transactions were malum prohi-bitum rather than malum in se, and the case did not involve a situation within the intended scope of protection of the licensing statute,[3] the licensing statute could not be invoked to avoid quantum meruit recovery.
As a matter of policy, the provisions of the Private Works Act, La. R.S. 9:4801, et seq., are to be strictly construed against lien claimants as 17they are in derogation of the common rights of owners. The privileges provided for are not to be extended or enlarged either by implication or the application of equitable considerations. Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962).
To establish a valid privilege under the Private Works Act, the individual claiming a privilege must qualify as a claimant under the express terms of the act. La. R.S, 9:4801 includes the specific persons or entities eligible for a privilege on an immovable to secure certain obligations of the owner arising from work on the immov *597 able. La. R.S. 9:4801(1) includes “Contractors, for the price of their work” as an eligible party. The term “contractor” is later defined in La. R.S. 9:4807(A) as “one who contracts with an owner to perform all or part of a work.”
Two subsets of a “contractor” are also defined, a “general contractor” and a “subcontractor.” La. R.S. 9:4807(B) explains that a “general contractor” is one that “contracts to perform all or substantially all of the work.” In contrast, a “subcontractor” includes one who “by contract directly made with a contractor... is bound to perform all or a part of a work contracted for by the contractor.” La. R.S. 9:4807(C).
The privilege now claimed by Leija is generally defined in the Civil Code as “a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages.” La. C.C. art. 3186. The “nature” of a creditor’s debt or principal obligation for which the Private Works Act affords the privilege arises from contract. The essential conclusion that is warranted by the Act’s provisions is that, in order to assert a valid lien, regardless of “general | ^contractor” or “subcontractor” status, the party claiming a privilege must demonstrate a valid and enforceable contract. It is well established in the record that Leija made an oral agreement with the Gathrights to perform certain services in the construction of a residential home in exchange for payments of the costs of labor and materials plus a 10% fee. This oral agreement would represent the parties’ contract, but for Leija’s violation of the licensing requirement of our law.
In this case, Leija has clearly admitted that his contractor’s license was inactive at the time of the oral agreement and at all times during the construction. He has also admitted in his pleadings and deposition that the costs of materials and labor for the project greatly exceeded the $75,000 threshold provided in the licensing statute. Regardless of his status as a general contractor or subcontractor, Leija was subject to the contractor licensing provisions because La. R.S. 37:2150.1(11) expressly includes all contractors and subcontractors. As explained by the statutes and jurisprudence, because Leija was subject to the licensing provisions and did not have an active license, any contract that he entered for residential construction with costs above $75,000 violated a prohibitory law which, in turn, rendered the contract void and unenforceable. Leija’s inability to establish a valid contractual obligation—the principal obligation—precludes the claim of a valid lien and privilege—the accessory right. Based on this application of the law to the uncontroverted facts, we affirm the district court’s grant of summary judgment to the intervenor, Regions Bank.
I a Conclusion
Accordingly, we affirm the trial court’s judgment granting Regions Bank’s motion for summary judgment. Costs of this appeal are assessed to appellant.
AFFIRMED.

. Although Regions labeled its motion as a motion for partial summary judgment, the form of the district court’s judgment is not a partial judgment, but rather a final judgment. La. C.C.P. art. 1915 provides that a partial summary judgment is a judgment which rules "as to one or more but less than all of the claims.” Such a judgment is not final unless certified as such by the court. Here, the district court’s order granted the full relief sought by Regions as the intervening party and contains no such certification. It is a full and final summary judgment ruling.

. Revision Comment (d) to La. C.C. art. 7 explains, ‘‘The term 'prohibitory law’ in Article 1⅛ of the Louisiana Civil Code of 1870 meant rules of public order. Whatever is done in contravention of a rule of public order is an absolute nullity. The words ‘laws enacted for the protection of the public interest’ have the same meaning as laws for the preservation of public order.' ”

. The court stated that because the licensing statute was intended to protect against incompetence, inexperience, or fraudulence, and no such injuries were pled, the goals of the statute were not implicated.