## NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2020 CA 0862

## ILGEN CONSTRUCTION, LLC

## VERSUS

## RAW MATERIALS, LLC AND THE HONORABLE JASON B. HARRIS, IN HIS OFFICIAL CAPACITY AS THE CLERK OF COURT FOR LIVINGSTON PARISH

*DATE OF JUDGMENT:*        APR 1 6 2021

ON APPEAL FROM THE TWENTY-FIRST JUDICIAL DISTRICT COURT
NUMBER 165190, DIVISION F, PARISH OF LIVINGSTON
STATE OF LOUISIANA

HONORABLE ELIZABETH P. WOLFE, JUDGE

* * * * * *

David J. Shelby, II
Leah C. Cook
T. Coulter McMahen
Kari A. Bergeron
Baton Rouge, Louisiana

Counsel for Plaintiff-Appellee
Ilgen Construction, LLC


Danial C. Vidrine
Baton Rouge, Louisiana

Counsel for Defendant-Appellant
Raw Materials, LLC


Eric L. Pittman
Denham Springs, Louisiana

Counsel for Defendant-Appellee
The Honorable Jason B. Harris, in
his official capacity as the Clerk of
Court for Livingston Parish

* * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

Disposition: AFFIRMED.

*Whipple, C.J., concurs. The placing of a lump sum" lien for a total amount without limiting the lien on each tract to the amount purportedly due was improper. (JEW)*

**CHUTZ, J.**

In this suit for a writ of mandamus and for damages, one of the defendants appeals a trial court judgment ordering the cancellation of two liens and a notice of lis pendens filed under the Private Works Act (PWA) and awarding damages and attorney fees to the plaintiff. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Ilgen Construction, LLC (Ilgen) is the owner of two tracts of immovable property located in Livingston Parish. Ilgen and Raw Materials, LLC (RML) entered into an oral agreement[1] for RML to perform clearing and dirt work preparatory to the development of residential lots on the two properties. According to invoices submitted by RML, the price for work on the property the parties referred to as the Milton Road project was $72,000.00, and the price for work on the property the parties referred to as the Burgess Road project was $18,500.00. Ilgen maintained the agreed price for the work on the Burgess Road project was $5,500.00.

RML is not a licensed contractor in Louisiana. Nevertheless, RML began work on the two projects and received payments totaling $40,000.00. Ilgen was dissatisfied with RML's work, however, and on March 12, 2018, terminated RML's services. RML claimed there were only a few days remaining before it would have completed the contracted work, and it demanded payment for the balance due under the contract. After Ilgen made no further payments, RML filed a materialman's lien[2] in the Livingston Parish mortgage records on April 10, 2018, in the amount of $50,500.00 on the two tracts of property owned by Ilgen. Pursuant to invoices

---

[1] At the hearing on Ilgen's writ of mandamus, counsel for RML alleged there were three different contracts involved in this matter. However, Ilgen's owner, Chris Ilgenfritz, indicated there was "a verbal contract" setting different prices for the two separate projects. In its oral reasons for judgment, the trial court referenced "a verbal agreement." We cannot say that this determination was manifestly erroneous. See *Gaines v. Lemoine*, 19-0551 (La. App. 1st Cir. 2/21/20), 297 So.3d 775, 778.

[2] The terms "lien" and "privilege" are used interchangeably in this opinion, although technically, "lien" is a common law term and "privilege" is a civilian term. See Michael H. Rubin, *Ruminations on the Louisiana Private Works Act*, 58 La. L. Rev. 569, 574 n.21 (1998).

2

attached to the lien, RML claimed Ilgen owed $18,500.00 for work RML performed on the Burgess Road project and $32,000.00 for work RML performed on the Milton Road project. RML did not link the amounts claimed to the specific tract of property on which the work was performed.

On May 25, 2018, Ilgen's counsel sent a demand letter to RML requesting RML have the lien canceled within ten days of receipt. RML declined to request cancelation of the lien. On August 2, 2018, RML filed a damages suit against Ilgen seeking a money judgment for the work it performed. Additionally, on September 10, 2018, RML filed a second materialman's lien on the same two tracts of property owned by Ilgen, as well as a notice of lis pendens. The second lien was duplicative of the first lien, except that it correctly spelled Ilgen's name, which had been misspelled as "Ilgin" in the first lien. On October 15, 2018, Ilgen's counsel sent RML a demand letter requesting that RML have the second lien canceled within ten days of receipt. RML did not comply with the request to have the lien cancelled.

Subsequently, Ilgen filed a petition for a writ of mandamus naming the Honorable Jason B. Harris, the Clerk of Court for Livingston Parish (Clerk of Court), and RML as defendants and seeking an order directing the Clerk of Court to cancel the first and second liens, as well as the notice of lis pendens. Ilgen also requested an award for damages resulting from the filing of the improper liens and for attorney fees.

Following a hearing, the trial court ruled in favor of Ilgen. On February 7, 2020, the trial court signed a judgment ordering that the first and second lien and the notice of lis pendens filed by RML be extinguished and directing the Clerk of Court to cancel them from the mortgage records. Additionally, Ilgen was awarded $4,294.13 in damages, as well as costs and attorney fees, in an amount to be

3

determined at a separate hearing and set forth in a separate judgment.[3] RML took an appeal from the February 7, 2020 judgment.[4]

Subsequently, a hearing was held to set attorney fees and costs. The trial court signed a judgment on April 20, 2020, awarding Ilgen $29,506.03 in attorney fees and costs, plus an additional $1,500.00 for attorney fees and costs associated with Ilgen's motion to tax attorney fees and costs. RML did not appeal the April 20, 2020 judgment.

## DISCUSSION

The trial court's written reasons for judgment indicate it concluded RML's failure to file a notice of contract in the mortgage records was "fatal" to RML's claim for a privilege under the PWA. The trial court further concluded the liens were extinguished under La. R.S. 9:4823(A)(2)[5] by RML's failure to file a suit to enforce the liens within one year of their filing.

In order for a general contractor to enjoy a privilege under the PWA, La. R.S. 9:4811(D) required the filing (in the mortgage records of the parish where the work was to be performed) of written notice of the contract between the general contractor and the owner if the price of the contract exceeded $25,000.00. See also La. R.S. 9:4811(A) & La. R.S. 9:4831(A). RML contends this provision was not applicable in this case because it only applies to general contractors, and RML was a subcontractor. In arguing it was not a general contractor on the Milton Road and Burgess Road projects, RML emphasizes that it only contracted with Ilgen to perform "dirt work," and not to perform all or substantially all of the work necessary for the construction of the houses to be built on the lots.

---

[3] The judgment also ordered the Clerk of Court to return the $63,125.00 in security that Ilgen previously provided to bond off the second lien and lis pendens pursuant to La. R.S. 9:4835.

[4] The Clerk of Court did not join in the appeal.

[5] All statutory references in this opinion are made to those statutes as they existed at the time of the relevant events herein, which was prior to the revision of the PWA by 2019 La. Acts, Act No. 325, eff. 1/1/20.

4

Regardless, our review of this matter indicates it is unnecessary to determine whether RML was a general contractor or subcontractor or whether the liens were extinguished by a failure to file a timely suit to enforce the liens. Even if the trial court erred in making those determinations, the liens were nevertheless fatally defective due to the fact that RML was not a licensed contractor in Louisiana.

In Louisiana, the licensing provisions for contractors were enacted to protect the interests of public order. *Leija v. Gathright*, 51,049 (La. App. 2d Cir. 12/21/16), 211 So.3d 592, 596, writ denied, 17-0144 (La. 3/13/17), 216 So.3d 806; see also La. R.S. 37:2150. Louisiana Civil Code article 2030 provides that a contract in violation of a rule of public order is an absolute nullity. Moreover, an absolutely null contract may not be confirmed. La. C.C. art. 2030; see also La. C.C. art. 7. Thus, individuals may not by private agreement set aside the licensing provisions enacted by the legislature. *Maroulis v. Entergy Louisiana, LLC*, 20-226 (La. App. 5th Cir. 2/10/21), ____ So.3d ____, 2021 WL 484332, at *2.

Under La. R.S. 37:2160(A)(1), it is unlawful in Louisiana for a person to engage in the business of contracting or to act as a contractor[6] without an active contractor's license. *Quaternary Resource Investigations, LLC v. Phillips*, 18-1543 (La. App. 1st Cir. 11/19/20), ____ So.3d ____, 2020 WL 6797271, at *11, writ denied, 20-01450 (La. 3/2/21), ____ So.3d ____, 2021 WL 791249. Further, it is well established that a construction contract made with an unlicensed contractor is an absolute nullity. *Quaternary Resource Investigations, LLC*, ____ So.3d at ____, 2020 WL 6797271, at *9; *Maroulis*, ____ So.3d at ____, 2021 WL 484332, at *2; see also *Leija*, 211 So.3d at 597.

In this case, it is undisputed that RML did not possess a Louisiana contractor license. Accordingly, the contract between RML and Ilgen was an absolute nullity.

---

[6] For purposes of the contractor licensing provisions, the term "contractor" includes both general contractors and subcontractors. See La. R.S. 37:2150.1(4)(b).

5

See *Quaternary Resource Investigations, LLC*, ____ So.3d at ____, 2020 WL 6797271, at *9; *Maroulis*, ____ So.3d at ____, 2021 WL 484332, at *2. Under La. C.C. art. 2033, an absolutely null contract is deemed never to have existed.

Given the special nature of the rights provided by the PWA, its provisions must be strictly construed. *Landco Construction, LLC v. Precision Construction & Maintenance, LLC*, 19-0403 (La. App. 1st Cir. 11/15/19), 290 So.3d 1185, 1191, writ denied, 19-01977 (La. 2/10/20), 292 So.3d 67. The PWA grants contractors and subcontractors a lien on immovable property for the price of the work performed on the immovable. La. R.S. 9:4801(1) and La. R.S. 9:4802(A)(1) & (B). Since the PWA defines a contractor as "one who contracts with an owner to perform all or part of a work," the lien granted to contractors by La. R.S. 9:4801(1) plainly "presupposes a direct contractual relationship between the [lien] holder and the owner." La. R.S. 9:4801, Comment (a) (1981); La. R.S. 9:4807(A). Additionally, a subcontractor is defined as one who by contract directly with or emanating from a contractor through a series of contracts is bound to perform all or a part of a work contracted for by the contractor. La. R.S. 9:4807(C). Louisiana Revised Statutes 9:4802(A)(1) & (B) grants a lien to subcontractors to secure "obligations arising out of the performance of work under the contract." These provisions demonstrate that the liens granted to contractors and subcontractors under the PWA are to secure debts or principal obligations arising from contracts. *Leija*, 211 So.3d at 597. Therefore, in the absence of a valid and enforceable contract, a contractor or subcontractor cannot assert a valid lien under the PWA.[7] *Leija*, 211 So.3d at 597; see also La. R.S. 9:4801(1) & Comment (a) (1981); La. R.S. 9:4802(A)(1) & (B); and La. R.S. 9:4807.

---

[7] Even though an unlicensed contractor is not entitled to recovery under contract, under certain circumstances, it may be entitled under the theory of unjust enrichment to recover the actual cost of its materials, labor, and services, without recovery of any profit or overhead expenses. See *Quaternary Resource Investigations, LLC*, ____ So.3d at ____, 2020 WL 6797271, at *11-16.

6

Moreover, the two liens filed by RML were also defective because they merely claimed a privilege on two separate tracts of immovable property in the lump sum of $50,500.00. RML failed to specify what amount of the total claimed was due for work performed on the first tract of property and what amount of the total claimed was due for work performed on the second tract of property.[8] Under the PWA, a claimant is only entitled to a lien for the work actually performed on the immovable property. A claimant cannot properly place a lien on immovable property for work that was not performed on that particular piece of property. Specifically, La. R.S. 9:4801 grants contractors a lien on "an immovable" for the obligation "arising out of a work *on the immovable*." (Emphasis added.) Similarly, La. R.S. 9:4802(B) provides that a subcontractor's claims against an owner "shall be secured by a privilege *on the immovable on which the work is performed*." (Emphasis added.) RML's liens were improper in that they imposed a lien in the full amount claimed for the work performed on both tracts of immovable property, without limiting the lien on each tract of property to the amount due for the work performed on that particular property.[9]

## CONCLUSION

For the reasons stated, the February 7, 2020 judgment of the trial court is affirmed. All costs of this appeal are assessed to defendant, Raw Materials, LLC.

**AFFIRMED.**

---

[8] Since La. R.S. 9:4801 provides that a privilege is granted on "an immovable" and La. R.S. 9:4802(B) provides for a privilege on "the immovable," we question whether it is proper to place a single lien on two separate tracts of immovable property. However, having resolved this matter on a different basis, we need not reach this issue.

[9] In brief, RML argues the trial court erred in awarding excessive attorney fees. However, the judgment on appeal merely held that Ilgen was entitled to attorney fees in an amount to be determined later in a separate judgment. RML did not appeal the April 20, 2020 judgment that set the actual amount of attorney fees owed. Accordingly, the issue of whether the trial court awarded excessive attorney fees is not before us in this appeal.