# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 16, 2024

Lyle W. Cayce
Clerk

—————————

No. 23-30773
Summary Calendar

—————————

Heidi C. Burke, *On behalf of themselves and those similarly situated*;
Jonathan F. Burke, *On behalf of themselves and those similarly situated*,

> *Plaintiffs—Appellants*,

*versus*

GeoVera Specialty Insurance Company; GeoVera
Advantage Insurance Services, Incorporated,

> *Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-2352

———————————————————————

Before Davis, Ho, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs-Appellants, Heidi and Jonathan Burke, appeal the district court's dismissal of their complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) as barred under the doctrine of res judicata. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30773

## I.

As alleged in the Burkes' complaint, on August 29, 2021, Hurricane Ida caused wind damage to their home in Kenner, Louisiana. At that time, the property was insured by Defendant-Appellee GeoVera Specialty Insurance Company's ("GeoVera Specialty") residential wind and hail policy. The Burkes subsequently filed a claim with GeoVera Specialty and received payment pursuant to their policy. In calculating that payment, GeoVera Specialty adjusted the Burkes' damage claim pursuant to its Roof System Payment Schedule, which lists the criteria used in reducing roof damage claims based on depreciation. Based on that schedule, GeoVera Specialty reduced the roof damage component of the Burkes' claim by forty-eight percent.

In March of 2022, before filing the instant action, the Burkes filed suit in Louisiana state court alleging that GeoVera Specialty undervalued their Hurricane Ida claim. GeoVera Specialty removed the action to federal court, asserting diversity jurisdiction. On September 8, 2022, the parties filed a joint motion to dismiss the lawsuit after reaching an amicable settlement, which the district court granted.

Over a year later, in July of 2023, the Burkes filed this suit against GeoVera Specialty and GeoVera Advantage Insurance Services, Inc.[1] ("GeoVera Advantage"). In the instant suit, the Burkes again attack GeoVera Specialty's payment of their Hurricane Ida claim, but this time on the grounds that GeoVera Specialty's use of the Roof System Payment Schedule violated Louisiana Revised Statutes § 22:1892(B)(6)(e). Specifically, the Burkes allege that the Roof System Payment Schedule is a "predetermined rate of depreciation to be applied to every roof based

---

[1] According to the Burkes' complaint, GeoVera Advantage "adjusted the claims of the Burkes on behalf of GeoVera Specialty."

exclusively on its objective age and roofing material without regard for its actual condition prior to the covered wind damage." They further allege that this runs counter to the requirement of § 22:1892(B)(6)(e) that "[d]epreciation shall be reasonable and based on a combination of objective criteria and subjective assessment, including the actual condition of the property prior to loss."[2]

GeoVera Specialty and GeoVera Advantage both moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted both motions and dismissed the Burkes' complaint with prejudice. The court concluded that the Burkes' claims against GeoVera Specialty were barred by res judicata based on the dismissal of the Burkes' earlier suit against GeoVera Specialty for the same property damage. The court also granted GeoVera Advantage's motion to dismiss on the grounds that the Burkes failed to state a claim against GeoVera Advantage, who was not their insurer, and it was unclear what duties the Burkes believed GeoVera Advantage violated.[3] The Burkes timely appealed.

## II.

"The res judicata effect of a prior judgment is a question of law that this court reviews de novo."[4] We also review *de novo* a district court's dismissal under Rule 12(b)(6).[5] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[2] La. Rev. Stat. § 22:1892(B)(6)(e).

[3] The Burkes do not challenge the district court's dismissal of their claims against GeoVera Advantage on appeal. Accordingly, they have forfeited any such challenge. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

[4] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

[5] *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020).

relief that is plausible on its face.'"[6]  This Court has previously held that dismissal of a complaint "under Rule 12(b)(6) is appropriate if the res judicata bar is apparent from the pleadings and judicially noticed facts."[7]

## III.

"Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit."[8]  To determine the preclusive effect of a prior judgment issued by a federal court sitting in diversity, we apply the preclusion law of the forum state.[9]  Under Louisiana law, "a second action is precluded when five elements are satisfied: '(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.'"[10]

It is undisputed that the final four elements are satisfied here, thus, the only issue in this appeal is whether there was a valid judgment in the Burkes' prior lawsuit.  The Burkes argue that the district court's order of dismissal in their initial lawsuit was not a valid judgment because it resulted from the parties' settlement agreement, which in turn was based on a

---

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[7] *Basic Cap. Mgmt.*, 976 F.3d at 591 (internal quotation marks and citation omitted). The district court here correctly acknowledged that "all of the relevant facts upon which GeoVera Specialty's res judicata defense is based are uncontroverted and contained in the public record of this Court."

[8] *Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002 (5th Cir. 2022) (internal quotation marks and citation omitted).

[9] *Id.*

[10] *Id.* at 1003 (quoting *Chevron U.S.A., Inc. v. State*, 993 So. 2d 187, 194 (La. 2008)).

depreciation calculation that violated § 22:1892(B)(6). The Burkes further assert that a settlement "based on the use of the unlawful, illicit depreciation calculation in the claims process is absolutely null and void as a matter of law," under Louisiana Civil Code Article 2030. Article 2030 provides that "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral."[11]

The district court rejected the Burkes' argument and concluded that § 22:1892(B)(6)(e) is not a rule of public order, and therefore its prior judgment of dismissal in the Burkes' initial lawsuit bars this action under the doctrine of res judicata. The district court emphasized that rules of public order focus on protecting "societal concerns broader than the concerns of the parties to the contract," and that § 22:1892(B)(6)(e) was enacted "to protect the individual insured." It further stated that there was "no broader societal concerns implicated when an individual insured does not dispute the validity of the depreciation method used on a claim." We agree.

Assuming without deciding that GeoVera Specialty's Roof System Payment Schedule violates § 22:1892(B)(6)(e), the success of the Burkes' argument depends on our acceptance of their position that § 22:1892(B)(6)(e) is a rule of public order within the meaning of Article 2030. However, the Burkes cite no authority holding that § 22:1892(B)(6)(e) is a rule of public order, and instead rely on the statement in Louisiana Revised Statutes § 22:2 that "[i]nsurance is an industry affected with the

---

[11] LA. CIV. CODE art. 2030. "Although the terms 'illicit' and 'immoral' are not defined in . . . [the statute], the term 'illicit' is interchangeable with the term 'unlawful.'" *Quaternary Res. Investigations, LLC v. Phillips*, 316 So. 3d 448, 468 (La. App. 1 Cir. 2020) (citation omitted).

public interest and it is the purpose of this Code to regulate that industry in all its phases."[12]

Acceptance of the Burkes' § 22:2 legislative intent argument would mean that *every* Louisiana statute regulating the insurance industry constitutes a rule of public order. But, as we have previously acknowledged, "the statute [that is, Article 2030] refers specifically to 'rules of public order,' not to a 'public interest' in general."[13] Moreover, our decision in *Brown v. Phoenix Life Insurance Co.*,[14] undermines the Burkes' argument. In *Brown*, we rejected the insured's claim that his universal life insurance policy was an absolute nullity under Article 2030 because the insurer failed to deliver the policy in violation of Louisiana Revised Statutes § 22:873(A).[15] In so holding, we emphasized that the insured cited "no authority holding that § 22:873(A) is a rule of public order," and instead courts had come to the opposite conclusion and declined to declare contracts null when an insurer fails to deliver a policy.[16] Accordingly, *Brown* is inconsistent with the Burkes' argument that all statutes regulating the insurance industry are rules of public order.[17]

---

[12] La. Rev. Stat. § 22:2(A)(1).

[13] *In re PetroQuest Energy, Inc.*, 54 F.4th 299, 306 n.13 (5th Cir. 2022).

[14] 843 F. App'x 533 (5th Cir. 2021) (per curiam) (unpublished).

[15] *Id.* at 546–47.

[16] *Id.* at 547 (citing *In re Matter of Complaint of Settoon Towing, L.L.C.*, 720 F.3d 268, 280–82 (5th Cir. 2013)).

[17] Although the Burkes make several arguments about how this case is distinguishable from *Brown*, they do not dispute that *Brown* relied on other cases, such as *Settoon*, in holding that "courts have not declared the relevant contracts null . . . when an insurer fails to deliver a policy in violation of § 22:873(A)." *Id.* (citing *Settoon*, 720 F.3d at 280–82).

The Burkes additionally rely on three Louisiana cases holding that statutes outside the insurance context constitute rules of public order. Specifically, the Burkes rely on two cases involving contracts with unlicensed professionals, *Leija v. Gathright*,[18] and *West Baton Rouge Parish School Board v. T.R. Ray, Inc.*[19] In both cases, the courts held that contracts made by unlicensed professionals were null based on prior precedent establishing that the relevant licensing requirements were rules of public order.[20] Similarly, in *Succession of Crute v. Crute*,[21] the court held that a divorce settlement which prohibited the couple from partitioning property for an indefinite period of time violated a rule of public order based on caselaw establishing that the "underlying rationale behind the right to partition is that it would be against public policy for property to be taken out of commerce and rendered unusable because of fragmented ownership."[22] The Burkes' reliance on these three cases is unconvincing given that they point to no similar precedent

---

[18] 211 So. 3d 592 (La. App. 2 Cir. 2016).

[19] 367 So. 2d 332 (La. 1979).

[20] *See T.R. Ray, Inc.*, 367 So. 2d at 334–35 (collecting cases involving licensing requirements); *Leija*, 211 So. 3d at 596 ("Several decisions by Louisiana courts have recognized that the failure to meet contractor licensing requirements can invalidate contractual agreements."). Additionally, both cases cited the fact that the goal of Louisiana's licensing statutes "is to protect 'the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract.'" *Leija*, 211 So. 3d at 595 (quoting LA. REV. STAT. § 37:2150); *T.R. Ray, Inc.*, 367 So. 2d at 334–35 (same). Such a clear legislative statement of protecting public welfare and safety is distinguishable from the legislative statement relied on by the Burkes that insurance "is an industry affected with the public industry and it is the purpose of this Code *to regulate that industry*." LA. REV. STAT. § 22:2(A)(1) (emphasis added).

[21] 226 So. 3d 1161 (La. App. 1 Cir. 2017).

[22] *See id.* at 1173–74 (collecting cases).

establishing that an insurance policy is null based on a violation of the Insurance Code.

## IV.

In sum, the district court correctly held that § 22:1892(B)(6)(e) is not a rule of public order and instead is "a rule intended for the protection of private parties."[23]   It thus follows that the district court's judgment dismissing the Burkes' initial lawsuit bars this action based on res judicata. Accordingly, we AFFIRM the judgment of the district court.

---

[23] LA. CIV. CODE art. 2031.